## HAMMER *v.* DOWNING.

[64 Pac. 651; 65 Pac. 17, 990; 67 Pac. 30.]

### AMENDING COMPLAINT—NEW CAUSE OF ACTION.

1. In an action for money had and received, amending a complaint charging the receipt of money to be used in the purchase and sale of "grain, namely, wheat," so as to read "grain or pork," to conform to the facts proved on the trial, was not erroneous, as introducing a new cause of action.

### PLEADING—SUFFICIENCY OF DENIAL.

2. In an action for ·money had and received, the complaint alleged "that at various times plaintiff advanced and paid to defendants · * * * divers sums of money, to be used and invested by them in the purchase and sale of grain or pork; * * * that defendants did not purchase * * * or otherwise use or invest said sums for or on account of plaintiff." The answer denied "that at various * * * or other times or ever * * * plaintiff advanced or paid to defendants, * * * or either of them, divers,or any sums of money, * * * to be used or invested by defendants, or either of them, in the purchase and sale of pork or grain for said plaintiff, or on his account, * * * 'or any other sum or sums whatever,' and deny that during said period, or at any other time, defendants, for or on account of plaintiff, did not use and invest any or all sums of money received by them for or on account of plaintiff, in accordance with the directions and instructions of plaintiff with reference to the use and investment thereof." *Held*, that though the answer did not specifically deny that defendants did not purchase or sell grain or pork for plaintiff, and was evasive on that point, it did deny the receipt of "any sum or sums whatever," which put plaintiff to the proof, not only of the payment of the money, but of the purpose for which it was paid.

### EFFECT OF ORDER ALLOWING PLEADING TO BE FILED.

3. In an action for money had and received, the amended answer having set up certain accountings and settlements, the court, for the purpose of expediting the trial, entered an order granting plaintiff leave to file a reply setting up defenses of fraud and mistake against the settlements, and directing the former reply to be taken and deemed as so amended. *Held*, that it must be assumed, not only that the replication was amended in the particular designated, but that the defense was well stated, not only by the averment of conclusions, but of facts from which the conclusions might be drawn.

### PLEADING—DEPARTURE.

4. A reply setting up fraud and mistake as defenses to allegations of accounting and settlement in the answer, pleaded as a bar to plaintiff's recovery in an action for money had and received, is not a departure.

### PLEADING—ALLEGING ALL ITEMS OF ACCOUNT.

5. In suing on an account or any cause of action consisting of several items the complaint should include all the charges and set up all the credits, whereby the difference, which will be the sum due, will be apparent. It is not permissible under an allegation of sale, or of money loaned, or of money received to plaintiff's use, where there are items on both sides of the account, to allege the difference between the two as the transaction constituting the cause of action, for that will be alleging a conclusion and not the actual facts.

### COMPLAINT—DEPARTURE—COMPETENT EVIDENCE.

6. In an action for money had and received, plaintiff alleged the payment of certain sums to defendant for investment, which the latter had retained to his

own use. Defendant answered that the money had been invested and sundry profits therefrom paid to plaintiff, which were pleaded as a set-off. Plaintiff replied stating that all profits had been returned to defendant for reinvestment, and again prayed judgment for the amount of the original investment. *Held*, that the plaintiff could not prove any other than the original investment, for that is the only one alleged, the replication not being in support of the complaint, but a departure; and that evidence of the sums paid to be reinvested was not competent.

ACCOUNTING WITH PLAINTIFF'S ASSIGNOR.

7. In an action for money had and received, to recover money placed with defendants to invest, a defense of accounting and settlement is not invalid because had prior to the assignment of the right of action to plaintiff, and he had not at that time elected to waive the contract and sue in the manner adopted since. If the accounting was valid as against an action on the contract, it was valid as against an action for money had and received.

TRIAL—QUESTION FOR JURY—PEREMPTORY INSTRUCTION.

8. Plaintiff, suing to recover sums placed with defendants to invest in grain on the board of trade, replied to a defense of settlement that he had been deceived as to defendant's method of doing business, and that the latter's dealings were merely simulated, and not real. *Held* that, as the question of fraud was for the jury, defendants were not entitled to a peremptory instruction.

PLEADING FACTS CONSTITUTING CAUSE OF ACTION—DEPARTURE.

9. In an action for money had and received, to recover sums given to defendants to invest, plaintiff attempted to recover only the cash in fact invested. Defendants pleaded as set-off the sums credited as profits, and plaintiff, in reply, set up the repayment of such sums to defendants. *Held* to constitute a departure, since plaintiff should have set up the entire account, and given credit for the money returned as profits.

SUPREME COURT—SUSPENDING PROCEEDINGS—PREMATURE JUDGMENT.

10. A judgment of the supreme court is effective the moment it is announced, and further proceedings thereon may be had until suspended by an order of court or the filing of a petition for a rehearing, as provided for by Rule 21; hence, a judgment for costs in favor of a prevailing party entered before a petition for rehearing has been filed is not premature, and can not be vacated for that reason.

TAXING COSTS IN SUPREME COURT—EFFECT OF OPINION.

11. The clerk of the supreme court does not derive his authority to allow or disallow costs and disbursements from the opinion in a case, but from the general statutes and the rules of court, so that the absence from an opinion of a direction on that subject is not controlling—but when the court exercises its prerogative and directs the allowance, it will bind the clerk. The discretion vested in the supreme court by Section 552, Hill's Ann. Laws, to allow or disallow costs when a new trial is ordered, has been exercised by the adoption of Rule 23 (35 Or. 587, 603).

COSTS ON APPEAL—DISCRETION OF CLERK.

12. Where a prevailing party has filed a properly verified cost bill within the prescribed time after the decision of the case, the clerk has no discretion, after the expiration of the time limited for filing objections thereto, as to allowing the amounts claimed.

COSTS—RULE OF PROCEDURE IN SUPREME COURT.

13. Hill's Ann. Laws, § 556, requiring a bill of costs to be filed within five days after the entry of judgment, or thereafter on the service of a copy on the opposite

party, and requiring objections thereto to be filed within two days thereafter, is a rule of procedure in the supreme court: *Rader* v. *Barr*, 37 Or. 453, followed.

OBJECTIONS TO COST BILL—RES JUDICATA.

14. A denial of a motion to vacate a judgment of the supreme court for costs and disbursements, as being prematurely entered, is not *res judicata* as to the items of costs included in the bill.

WAIVING OBJECTIONS—RES JUDICATA.

15. The filing of an affidavit in support of a bill of costs after the filing of objections thereto is a waiver of the objection that they were not filed within the proper time.

FICTITIOUS COSTS NOT ALLOWABLE.

16. Parties will be allowed as disbursements for preparing transcripts and printing abstracts and briefs only the sums actually paid out for those purposes.

ABSTRACT—COST OF PRINTING UNNECESSARY PAPERS.

17. Under Rule 4 of the Supreme Court (35 Or. 587, 591), the abstract of the record must not contain papers that are unnecessary to an understanding of the questions involved in the appeal—as, for example, an original pleading that has been superseded by an amended one—and the cost of printing such matter will not be allowed as a disbursement: Rules 23 and 24 (35 Or. 587, 603).*

From Multnomah : ALFRED F. SEARS, JR., Judge.

This is an action by Thomas J. Hammer against F. O. Downing and F. H. Hopkins to recover certain moneys paid to them by plaintiff and others. There was a judgment for plaintiff. The judgment was reversed and a rehearing denied, the opinion in both instances being written by Judge WOLVERTON. Afterward a motion to vacate the judgment for costs was overruled, and finally part of the costs claimed were disallowed. Judge MOORE wrote the opinions on both motions.

> REVERSED ; REHEARING DENIED ;
> MOTION TO VACATE OVERRULED ;
> COSTS RETAXED.

For appellants there was a brief over the names of *Woodward & Palmer* and *Cotton, Teal & Minor*, with an oral argument by *Mr. William W. Cotton.*

---

*NOTE.—See *Young* v. *State*, 36 Or. 417 (60 Pac. 711), and *Albert* v. *Salem*, 39 Or. 466 (66 Pac. 233).—REPORTER.

For respondent there was a brief over the names of *Watson & Beekman, Coovert & Stapleton, Edw. Mendenhall,* and *Wilson T. Hume,* with an oral argument by *Messrs. Edw. B. Watson* and *Elmer E. Coovert.*

MR. JUSTICE WOLVERTON delivered the opinion.

The plaintiff sues for money had and received, his complaint containing eight counts. The allegations are similar in all, except the last, wherein no assignment of demand was necessary to be shown, as the transaction involved was with the plaintiff personally. We therefore give the first, only, which is as follows, omitting formal averments : "That at various times between the first day of January, 1896, and the first day of June, 1897, at Portland, Oregon, W. A. Wells advanced and paid to defendants, as such partners, divers sums of money, altogether amounting to the sum of $1,200, to be used and invested by them in the purchase and sale of grain, namely, wheat, for him and on his account, in the board of trade of the City of Chicago, State of Illinois, at said time, less their commission on such purchase and sale. The defendants did not purchase nor sell any wheat or other grain during said period, or at any other time, for or on account of said W. A. Wells, in said board of trade or elsewhere, or otherwise use or invest said sums aggregating said amount of $1,200, or any part thereof, for or on account of said W. A. Wells, or earn or become entitled to any commission whatsoever." Then follow allegations of the assignment of the claim, demand, and nonpayment. By leave of the court the complaint was amended during the trial so as to conform to the facts proved, by showing that the dealings were in "grain or pork," instead of wheat, simply, and the defendants were permitted to file an amended answer thereto, which runs as follows : "Deny that at various times between

the first day of January, 1896, and the first day of June, 1897, or at other times, or ever, at Portland, Oregon, or elsewhere, W. A. Wells advanced or paid to defendants, as partners or otherwise, or to either of them, divers or any sums of money, either amounting to the sum of $1,200, or to any sum whatever, to be used or invested by defendants, or either of them, in the purchase or sale of grain of any kind soever, or pork, for said W. A. Wells, or on his account, in the board of trade of the City of Chicago, State of Illinois, or elsewhere, at said or any times, less their or any commissions on said alleged purchase or sale, or otherwise, or any other sum or sums whatever; and deny that during said period, or at any other time, these defendants, for or on account of said W. A. Wells, did not use and invest any and all sums of money received by them for and on account of said W. A. Wells, in accordance with the directions and instructions of said W. A. Wells with reference to the use and investment thereof:" and, continuing, defendants specifically deny all other allegations of the complaint, and interpose three separate defenses, setting up (1) that defendants paid Wells $982.50 prior to any assignment of his demand, which was received and accepted by him in full satisfaction of said alleged claim; (2) that, prior to any assignment of the demand, to wit, on or about April 30, 1897, the defendants and Wells had a mutual accounting touching the matters and things mentioned in the complaint, and that upon said accounting it was found there was nothing due Wells from defendants, and that, at other times prior to said assignment, other accountings were had, and that defendants paid to the said Wells the amounts found due upon such respective accountings; and, (3) by way of set-off, that, prior to the time of said alleged assignment, at the special instance and request of said Wells, and without consideration, defendants

advanced and paid to Wells divers and sundry sums of money, amounting in the aggregate to $982.50, which said sums, and said aggregate sum of $982.50, were, and each of them was, received by Wells to and for the use and benefit of the defendants, and the same has not been repaid. The original answer did not set up these accountings and settlements, and hence it became necessary to amend the reply to meet that defense. As an affirmative defense to the set-off pleaded in the original answer, it was alleged in the reply "that all said averred sums of money received by said W. A. Wells from defendants, and every portion thereof, were during said period, and prior to the commencement of this action, fully returned and repaid to the defendants by the said W. A. Wells."

To obviate the formal amendment of the reply, the court made and entered an order as follows: "Upon the filing of defendants' amended answer by leave of the court, setting up an additional separate defense by mutual accountings and settlements, being second and separate defense therein to each separate cause of action, and upon motion of plaintiff by his attorneys, it is ordered by the court that plaintiff have leave to amend his replication so as to deny each and every averment in said second separate defense to each separate cause of action, and allege that each and every of said averred accountings, settlements, and payments, and every item in any account considered on any such averred accounting, and the assent of plaintiff or any of his assignors thereto, was induced and procured by defendants through fraud and false representations on their part, and mistake on the part of plaintiff and his said assignors, and that plaintiff's replication shall be taken and deemed as so amended without filing any amended pleading or interlineation of his original replication." At the time of

this entry the defendants objected to it upon the ground that the plaintiff could not enlarge his cause of action by the reply, and because it was apparent upon its face that the matter relied upon does not constitute a sufficient reply to the facts stated in the separate defense of mutual accountings and settlements, and is otherwise insufficient.

The evidence offered in support of the several causes of action was very similar in its nature, except as it pertains to the last, which was concerning the dealings and transactions had with the plaintiff individually, and hence the statement may with propriety be confined to one or two only of such causes. The plaintiff was first called as a witness, and was shown certain statements of accounts, eight in number, marked, respectively, "AA," "X," "Q," "JJ," "KK," "NN," "EE," and "L," which were identified by him and then offered in evidence, whereupon defendants' counsel objected, assigning as a reason therefor that they comprised a large number of transactions other than money had and received by the defendants from the plaintiff and his assignors, and were immaterial and irrelevant. In answer to the objection, counsel for plaintiff stated that the exhibits were offered for the purpose of showing the amount of money paid into the hands of Downing, Hopkins & Company, and the amount paid by them to each of the parties, and the dates. The defendants then interposed a further objection that the accounts do not show money had and received, and that all of them, except that of the plaintiff individually, exhibit receipts of money far in excess of what is claimed by the complaint. A special exception was also noted to the excess, but, notwithstanding, they were admitted in evidence. Those of Wells and Reidt, the assignors of two of the demands of plaintiff, forming the basis of the first and fourth causes of action, are as follows :

PLAINTIFF'S EXHIBIT NN.

W. A. Wells.

| 1896. | | | | | 1896. | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Nov. | 23 | To cash | 300 | | Nov. | 7 | By cash | 200 | |
| Dec. | 24 | " " | 200 | | | 14 | " gain | 25 | |
| | 29 | " " | 20 | | | 17 | " cash | 75 | |
| 1897. | | | | | Dec. | 4 | " " | 200 | |
| Jan. | 28 | " puts | 5 | | | 5 | " " | 100 | |
| | 29 | " calls | 10 | | | 11 | " " | 200 | |
| | 30 | " tel. | | 30 | | 24 | " gain | 25 | |
| Feb. | 1 | " 5 puts | 5 | 20 | | 30 | " " | 7 | 50 |
| | 2 | " 5 calls | 5 | 30 | 1897. | | | | |
| | 3 | " loss | 687 | 50 | Jan. | 13 | " cash | 200 | |
| | 9 | " 5 calls | 5 | 50 | | 27 | " " | 200 | |
| | 9 | " loss | 62 | 50 | | 29 | " cash | 100 | |
| | 10 | " loss | 37 | 50 | | " | " " | 100 | |
| Mch. | 6 | " S. L. Hayes | 362 | 50 | Feb. | 1 | " cash | 100 | |
| | 20 | " check | 100 | | | 1 | " " | 100 | |
| Apl. | 30 | " loss | 231 | 25 | | 4 | " gain | 18 | 75 |
| Mch. | 8 | " " | 143 | 75 | | 8 | " " | 6 | 25 |
| | | | | | | 9 | error | 62 | 50 |
| | | | 2113 | 80 | | 13 | " cash | 200 | |
| | | | | | | 20 | " gain | 6 | 25 |
| Apl. | 2 | Error Cr. Apr. 2 | 137 | 50 | Mch. | 2 | " " | 100 | |
| | | | | | | 11 | " cash | 150 | |
| | | | | | Apl. | 2 | " gain | 137 | 50 |
| | | | | | May | 1 | " bal. | | 05 |
| | | | | | | | | 2113 | 80 |

PLAINTIFF'S EXHIBIT AA.

W. Reidt.

| 1896. | | | | | 1896. | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Nov. | 14 | To cash | $107 | 50 | Nov. | 13 | By cash | $ 60 | |
| | 16 | " loss | 22 | 50 | | 14 | " " | 30 | |
| | | | | | | " | " gain | 17 | 50 |
| | 19 | " " | 20 | | | 17 | " cash | 22 | 50 |
| | 20 | " " | 110 | | | 18 | " gain | 7 | 50 |
| | 25 | " " | 250 | | | " | " cash | 30 | |
| | | | | | | 19 | " " | 200 | |
| | " | " cash | 100 | | | 21 | " gain | 56 | 25 |
| | | | | | | 23 | " " | 6 | 25 |
| | | | | | | 24 | " cash | 180 | |
| Dec. | 29 | " loss | 68 | 75 | Dec. | 29 | " " | 68 | 75 |
| | | | 678 | 75 | | | | 678 | 75 |

In connection with the Wells demand, eight receipts from Downing, Hopkins & Company, showing payments to them by Wells of eight several sums of money from time to time, aggregating $1,000, were offered, and, as it respects the Reidt claim, four receipts, showing payments to Downing, Hopkins & Company of $470, were offered, and all admitted, over objections. The statements of account were offered a second time, in connection with each assigned demand, when like objections were interposed as formerly, and it was further insisted that they were

at variance with the allegations of the complaint, and
did not tend to support the issues tendered. Again, at
the close of the testimony as to some of, if not all, the
different causes, counsel for defendants moved to strike
out the testimony of witnesses, and more particularly as
it pertained to the moneys paid to the defendants in
excess of that demanded in the complaint, assigning as
reasons therefor that it was at variance with such com-
plaint, and showed an attempt to split up the cause of
action. All such motions were overruled, and, the ver-
dict being favorable to the plaintiff, the defendants ap-
peal.

1. The amended complaint does not introduce a new
cause of action, and was therefore properly allowed.

2. It is suggested that the effect of the manner and
form of the denials adopted in the answer, in the absence
of an affirmative allegation accompanying them that the
money advanced was used by defendants for some other
purpose, is to admit that the money so advanced was not
used or invested as it is alleged that the defendants agreed
to use and invest it,—that is, in the purchase and sale
of grain and pork. Brought into near relation, the alle-
gations are ''that at various times * * * Wells ad-
vanced and paid to defendants * * * divers sums of
money, to be used and invested by them in the purchase
and sale of grain or pork; * * * that defendants
did not purchase * * * or otherwise use or invest
said sums for or on account of said Wells,'' etc. The
denials are ''that at various * * * or other times
or ever * * * Wells advanced or paid to defend-
ants, * * * or either of them, divers or any sums of
money, * * * to be used or invested by defendants,
or either of them, in the purchase and sale of grain or
pork for said Wells, or on his account, * * * or any

other sum or sums whatever, and deny that during said period, or at any other time, these defendants, for or on account of said Wells, did not use and invest any or all sums of money received by them for and on account of said Wells, in accordance with the directions and instructions of said Wells with reference to the use and investment thereof." The denials are somewhat ambiguous, but we think their effect is to put in issue the payment of any money whatever by plaintiff to the defendants. Following the words, "to be used and invested," etc., at some distance, but apparently in the same connection, is the expression, "or any other sum or sums whatever," which is the equivalent of a denial that Wells advanced or paid to the defendants any money. There is, however, no explicit denial of the allegation that the defendants did not purchase or sell any grain or pork for or on account of Wells on the Chicago Board of Trade, but the answer does deny that during said period the defendants, for or on account of said Wells, did not use or invest all sums received for or on his account, in accordance with his directions and instructions. This brings into the controversy a feigned issue. The plea presupposes that Wells had otherwise directed the use and investment of said sums of money without averring it, and follows it up with a denial that the defendants did not use and invest it in accordance with such directions. That there is an attempted evasion of the true issue is plain, and we think the effect is to admit that the money, if any was received by the defendants, was not invested in the purchase or sale of grain or pork on the Chicago Board of Trade. Nevertheless, there stands the denial that defendants received "any sum or sums whatever," which puts the plaintiff to the proof, not only of the payment of the money to defendants, but also of the purpose for which

39 OR.— 33.

it was paid, so as to lay the foundation for the breach, which is, if the foundation is well laid, admitted.

3.   It is next insisted that the reply should be regarded as a departure in the pleadings in two particulars : First, as it respects the fraud and mistake attempted to be set up touching the several accountings referred to in the answer ; and, second, as it concerns the affirmative allegations touching the set-off pleaded by the defendants. The order entered by the court was doubtless not intended to set forth fully and in technical language the defense of fraud and mistake as against the alleged settlements. It simply grants the plaintiff leave to file a reply setting up such matter, and directs that the former replication shall be taken and deemed as so amended, which was for the purpose of expediting the trial.  Under such conditions, we must not only assume that the replication was amended in the particular designated, but that the defense was well stated, not by the averment of conclusions only, but of facts from which the conclusions may be drawn.

4.   Nor is the defense that the alleged accountings were procured through fraud and mistake a departure. These accountings were pleaded as an impediment or bar to the plaintiff's recovery, and the reply is in avoidance thereof, so that the plaintiff may be able to show that, if such were in fact had, they were obtained by fraud, and thus nullify their effect.

5..  It is not clear that the second objection was made to this replication at the time leave was granted to make the amendment, but it is expressly made here, and the objections to the introduction of the evidence are of such a nature as to require us to determine the question.   It will be noted that the answer sets up certain payments

of money made to the plaintiff's assignors by the defend-
ants at their especial instance and request and without
consideration, which money defendants allege the plain-
tiff had and received to the use and benefit of the de-
fendants.   After traversing these averments, the reply
sets forth that the several sums of money so alleged to
have been had and received by the plaintiff had been
fully repaid to the defendants.   For the lack of more
specific averments of both the answer and reply, we are
unable to say from these pleadings alone that the reply
constitutes a departure in this particular ; but when the
plaintiff's exhibits, being statements of accounts, are
brought to the attention of the court, it becomes at once
manifest that the plaintiff has not included in his com-
plaint all sums of money paid by him to the defendants
under like conditions and within the specified dates as
those which form the basis of the action, and that the
purpose of the reply is to set off such as were not included
against the money which the defendants allege that the
plaintiff and his assignors had and received of defendants
to their use and benefit.   It further appears that the
money paid by the defendants to the plaintiff was so paid
in the course of the same dealings out of which it is
alleged that plaintiff's demand arises.   The replication
of a set-off to a plea of set-off is bad, and constitutes a
departure in pleading.   But the reply in this case is not
technically a set-off.   It is rather a plea of payment,
which ought to have been included in plaintiff's com-
plaint if he would avoid the set-off in the answer.   He
can not be permitted to split up his demand, and, when
a plea of set-off is made to such as he has preferred to
sue upon, set up the balance in the way of repayment as
a defense to the set-off, where all the demands coming
from either side arise out of the same course of dealings
and within the time alleged in the complaint.   MATTE-

SON, C. J., in *Heath* v. *Doyle*, 18 R. I. 252, 255 (27 Atl. 333, 335), says : "The plaintiff must prevail, if at all, on the matters alleged in his declaration. A replication of set-off to a plea of set-off, though it might otherwise be a good answer to the adverse allegations of the plea, is bad, nevertheless, being what is technically known as a 'departure', because it does not support the declaration, as every subsequent pleading on the part of the plaintiff is required to do by the rules of pleading." To the same purpose, see *Dawson* v. *Dillon*, 26 Mo. 395.

6.   There is a contention that the excess shown by the credits in the respective accounts constituting the set-offs of the defendants was for money which the defendants paid plaintiff and his assignors as a profit on pretended purchases and sales of grain and pork, returned to the defendants for reinvestment, and that the purpose of the complaint and the introduction of the accounts was to recover only such amounts as he and his assignors advanced out of their own individual funds, disregarding and excluding any increase of funds because of any gains or profits. It was expressly stated, after objection was made to the introduction of these accounts, that the purpose of using them was to show the amount of money paid into the hands of Downing, Hopkins & Company, and the amount paid back ; hence, when we refer to the accounts, taking as an illustration Wells' statement, we find that he is credited with cash representing payments of money made by him to the defendants, between the dates named in the complaint, aggregating $1,925. He is also credited with an aggregate of $188.75, denominated "gain." Now, we may assume that in putting cash back into the business this amount was included. Deducting it, therefore, from the cash credits, we have $1,736.25 as the amount Wells put in of his own means,

regardless of any profits; but, instead of that amount, plaintiff sues for $1,200. So, the contention does not hold good that the plaintiff is suing for the money which he and his assignors have put into the business of their own funds, disregarding the gains. On the debit side, we find that Wells has drawn from the defendants cash, including the check of March 20th and the Hayes debit, to the amount of $982.50, and this is the amount it is sought to cancel by the surplus payments of cash over and above the sums sued for, contained upon the credit side of the account. The Reidt account shows the same state of affairs. The amount actually paid in, less gain, which he is supposed to have turned back into the venture, is $503.75, while the amount sued for is $400. The amount of cash paid to Reidt, as shown by the debit side of the account, is $207.50, which is the exact amount for which defendants claim a set-off. To defeat this set-off demand, the plaintiff attempts to show payments of money by Reidt to defendants, which payments are all contained upon the credit side of the same account. Without further elaboration, it is apparent that the accounts were offered for a double purpose: First, to prove plaintiff's demand; and, second, to show repayment to defendants of the sums of money which they have alleged were received by plaintiff to their use and benefit; but they were not competent for either under the state of the pleadings. They had a tendency to prove the allegations of the complaint, it is true, but they proved too much. The aggregate of the demands on the credit side is so largely in excess of the amount sued for as to show a different demand, and there was no attempt whatever to designate or specify any certain credits as indicating the identical money paid upon which plaintiff's claims are based, so that there was a variance·between the pleadings and proofs, such as required an amendment to cure.

It was clearly material, and the errors attending the admission of the statements of accounts can not be properly disregarded, as though the amendment had been actually made in the trial court : *Robinson Min. Co.* v. *Johnson*, 13 Colo. 258 (22 Pac. 459, 5 L. R. A. 769).

These observations do not apply with equal force to the plaintiff's statement touching his own account, because no set-off is pleaded to that cause of action, and the credits, less the gain, are not so largely in excess of the amount sued for. The reply being a departure, it could not support the complaint, much less would the evidence be competent to substantiate it. But it is claimed that the money which it is alleged that defendants had and received of plaintiff was otherwise shown. The record, however, does not bear out the contention. In the case of Reidt, the $400 sued for, with $70 additional, is shown, while, in the case of Wells, $1,000 only is thus proven of the $1,200 sued for ; but this could not in any event cure the error in admitting the statement of accounts.

7.    There is another contention,—that the accountings and settlements set up in the answer do not constitute a valid defense to the action for money had and received, because it is alleged that they were had prior to the assignment of the demands to the plaintiff, and plaintiff had not at that time elected to waive the contract and sue in the manner adopted. But it is difficult to see why these accountings are not just as effective as a defense in the one case as in the other. If they were had at all, and were entered into in good faith and without inducement of fraud, or were not the result of mistake of the parties concerned, they constitute a full defense to any liability that might have arisen upon the contract, and the mere circumstance that a demand was made for money paid to the defendants, which became necessary for the purpose

of employing another form of action, could not circumvent the effect of the accountings and settlements. If they destroyed the cause of action upon the contract, and left the parties with all dealings between them adjusted, it could not be revived in another form by the mere circumstance of a demand.

8. The defendants urge that, because of the accountings, the court should have instructed the jury to return a verdict for them. It was a question to be determined under the evidence touching the manner of adjustments and the alleged fraud and mistakes attending them, whether such accountings had been fairly and duly consummated. The plaintiff asserts that he and his assignors were deceived in the defendants' method of doing business, and supposed that they were buying and selling on the Chicago Board of Trade, and that they were actually dealing in grain and pork, whereas the dealings were merely simulated, and not real. Now, if these transactions were fraudulent, and without knowledge of the plaintiff and his assignors, the pretended accountings and settlements may have been had under like conditions and without their knowledge as to the true state of affairs; hence would also be fraudulent as to them. These were matters, however, for the jury to determine, and therefore it would not be proper to instruct it to return a verdict as requested.

Other errors have been assigned in the record and questions presented for our determination, but, as the case must go back, they may not arise again on a retrial; hence it is unnecessary to pass upon them now. The judgment below is reversed, and the cause remanded for such other proceedings as may seem proper.

REVERSED.

Decided 3 June, 1901.

## ON MOTION FOR REHEARING.

MR. JUSTICE WOLVERTON delivered the opinion.

9.  It is stoutly insisted by the respondent, in his petition for a rehearing of this cause, that the action for money had and received to the use and benefit of another proceeds upon the idea that the sum sued for, or, rather, the amount in the hands of the defendant at the time of the institution of the action, is a "single or entire demand and cause of action," notwithstanding it may be the accumulation of several amounts received at different times, and must necessarily be so treated and regarded in formulating the pleadings. The position, however, is untenable, in view of the fact that under the Code, as construed by this court, the mode of statement employed by the "common counts" known to the common law is inappropriate and insufficient; it being deemed essential to set out the facts from which the cause of action arises, and that the proofs must extend to and comprehend all the items going to the establishment of such accumulation. There is nothing peculiar about the action that requires a procedure different from that of any other form of action that might be employed. It is common in *indebitatus assumpsit* to allege that defendant was on a day named indebted to the plaintiff in a sum named, and that he has not paid the same or any part thereof: Phillips, Code Plead. § 98. But, if any payment has been made upon the account, good pleading, under our practice, requires that the gross sum be stated as the amount in which the defendant is indebted, and also the payments, if any, at least in the aggregate, so that the amount due becomes a matter of deduction apparent upon the face of the complaint. This brings into the investigation the entire ac-

count, and the balance, when ascertained, is the amount subject to recovery. The complaint in the case at bar proceeds upon the theory that there was an account between the parties as it is therein alleged ; that at various times between January 1, 1896, and June 1, 1897, the assignors of plaintiff advanced and paid to the defendants divers amounts of money, aggregating a sum named. The investigation necessarily embraces all these items, thereby requiring a computation to determine what plaintiff is entitled to recover, so that the amount sued for can not be regarded as a "single or entire demand and cause of action." It is a resultant factor, and the cause of action must be based upon the facts out of which it arose. It is quite true that the action for money had and received arises *ex lege;* that is to say, the requisite facts being established, the law fixes the privity, and entails the obligation to respond, and the fiction of a promise is no longer necessary to be employed in its support. We can conceive of no reason, however, why the action may not proceed by analogy as upon an account; the only difference being that, in the one case, the law raises the obligation to refund that which has been received, while in the other the privity and promise is established by the undertaking of the parties, express or implied. In this view, the entire account, not the single demand named in the complaint as the amount sought to be recovered, became a matter for establishment by proof. It affords or gives basis to the cause of action, and, as the plaintiff has seen fit to so treat it and sue upon it, he can not be permitted to recover upon it by piecemeal; that is, to recover as to part by his complaint and recoup as to the balance in his reply. He should have sued upon the entire account, and given credit for the money returned, and the subsequent pleadings and proofs would have proceeded as naturally and logically as in any other form of

action. This is the pivotal question in the case; all others hinge upon it.

The question of variance has been discussed in the main opinion, but this further observation may be made : The accounts offered and admitted are incompetent, as they tend to establish a reply which constitutes in its purpose and effect a clear departure from the ground taken in the complaint. The purpose was theretofor obscured, but the proffer revealed it, so that it was error for this reason, if for none other, to admit them over the objection of the defendants. It is suggested that the plaintiff had never come to his rebuttal or the establishment of his defense set up by the reply, the defendants having rested without offering any testimony upon their part. The accounts, however, it must be admitted, had a potent tendency to prove their case as set up by the answer, but they at the same time countervailed it by establishing the allegations of the reply. They were not competent, therefore, at any stage of the trial. The first separate defense is in the nature of a plea of settlement, and the third is a set-off, in view of the theory adopted by the plaintiff as exhibited by his complaint.

Another matter should be mentioned in disposing of the petition for rehearing. By inadvertence, the writer omitted the word "other" from the opinion at one place in attempting to quote the language of the answer, namely, "any other sum or sums whatever," and the correction will be made supplying it. There can be no significance attached to this misquotation, as the conclusion reached was based upon the language employed in the answer, and not upon that inadvertently used. This is quite apparent, however, as the language is elsewhere twice correctly quoted.          REHEARING DENIED.

Decided 12 August, 1901.

ON MOTION TO VACATE THE JUDGMENT FOR COSTS.

*Mr. Edward B. Watson*, for the motion.

*Mr. William W. Cotton*, contra.

MR. JUSTICE MOORE delivered the opinion.

10. . This is a motion to vacate a judgment of this court
in respect to the costs and disbursements.   The opinion
was handed down and judgment pronounced April 8,
1901.   Two days thereafter the defendants filed a veri-
fied statement of the disbursements to which they claimed
to be entitled, and on or before the twelfth of that month,
as appears from an inspection of the judgment roll, the
judgment was entered in the journal, to the effect that
the judgment rendered in the court below was reversed,
and that the appellants recover their costs and disburse-
ments in this court upon the appeal, allowed and taxed
at $———.   The plaintiff's counsel, on April 27, filed a
petition for a rehearing, which was overruled June 3,
and on the twenty-first of the latter month they filed
this motion, and four days thereafter filed objections to
said claim for costs and disbursements.   It is contended
that, as the parties have twenty days after the filing of
the opinion to petition for a rehearing, the effect of which
is to suspend all further proceedings until the petition is
disposed of (Sup. Ct. Rules 20, 21, 35 Or. 587, 602), the
clerk was not authorized to enter the judgment until the
petition for rehearing was denied, and hence the entry
should be vacated.   In *Houston* v. *Williams*, 13 Cal. 24
(73 Am. Dec. 565), it was held that a decision of a court
is its judgment, the opinion is the reasons given therefor.
The former, being entered of record immediately, can
only be changed upon a petition for a rehearing or a

modification. The latter is the property of the judges, subject to their revision, correction, and modification until it is transcribed in the record with the consent of the writer, when it ceases to be subject to change, except through regular proceedings before the court by petition. "The rendition of a judgment," says Mr. Black in his work on that subject (volume 1, § 106), "is the judicial act of the court in pronouncing the sentence of the law upon the facts in controversy, as ascertained by the pleadings and the verdict. The entry of a judgment is a ministerial act, which consists in spreading upon the record a statement of the final conclusion reached by the court in the matter, thus furnishing external and incontestable evidence of the sentence given and designed to stand as a perpetual memorial of its action. It is the former, therefore, that is the effective result of the litigation."

A judgment is as final when pronounced by the court as when entered and recorded by the clerk: 18 Ency. Pl. & Pr. 438. When this court on April 8, 1901, announced, in handing down the opinion, that the judgment of the lower court was reversed, that·instant our judgment, to all intents and purposes, became final; and the clerk, in the performance of his duty, having made a note of such decision when it was pronounced, thereafter amplified his memorandum to suit the facts of the case as made by the transcript, and thereupon entered it of record as of the date it was rendered. Plaintiff's counsel, in support of the principle for which they contend, cite the case of *Uhe* v. *Chicago, M. & St. P. Ry. Co.* 4 S. D. 505 (57 N. W. 484), wherein it was held that the legal effect of an order that all proceedings be stayed for a definite time is to stop further progress in the case at the point where such order attaches. The justice of such a rule must be conceded, but it can have no application

to the case at bar, for no order was made at the time the judgment was pronounced, whereby further proceedings herein were suspended. Under the provisions of Rule 21 of this court it is the filing of a petition for a rehearing that suspends further proceedings, without which there can be no interregnum in the course prescribed to secure the fruit of the judgment; for the order of the court staying further proceedings never attaches until the petition for a rehearing is filed. The clerk, therefore, properly entered the judgment as of the date when it was pronounced.

11.  It is contended that, a new trial having been ordered herein, the costs upon the appeal was a matter within the discretion of the court (Hill's Ann. Laws, § 552, subd. 3), and, nothing having been said in the opinion respecting costs, the clerk had no authority to tax them, and hence the judgment in this respect should be vacated. We do not understand that it is necessary to state in an opinion the details of a judgment or decree which the clerk is required to enter. Rule 23 (35 Or. 587, 603,) of this court is as follows : "It shall be the duty of the clerk, in taxing costs, to allow to the prevailing party the actual costs of printing his abstract or brief (not to exceed $1.00 a page, including cover, when printed in pica, and $1.25 per page if printed in small pica,) unless in equity cases, for special reasons apparent in the record, it is otherwise ordered." This rule is an exercise of the court's discretion in each case where a new trial is ordered, and governs the clerk in the taxation of costs, unless otherwise directed by the court.

12.  The defendants having filed a verified statement of the disbursements to which they claim to have been entitled within five days from the entry of the judgment (Hill's Ann. Laws, § 556), and no objection thereto hav-

ing been filed within the time prescribed by law, in the absence thereof the clerk was without discretion in the allowance of costs and disbursements and obliged to tax them as demanded in the cost bill : Hill's Ann. Laws, § 556.   It follows that the motion is overruled.

MOTION TO VACATE OVERRULED.

Decided 23 December, 1901.

ON MOTION TO RETAX COSTS.

MR. JUSTICE MOORE delivered the opinion.

This is a motion to retax costs.   Judgment having been rendered April 8, 1901, against the plaintiff, the defendants two days thereafter filed a verified statement of their disbursements, which they claimed to be entitled to recover, containing, *inter alia*, the following items :

| | |
|---|---:|
| Cost of transcript on appeal | $346 15 |
| Cost of printed abstract (500 pages) | 500 00 |
| Cost of printed briefs (158 pages) | 158 00 |

The clerk entered a judgment on the twelfth to the effect that the appellants recover their costs and disbursements in this court upon the appeal, allowed and taxed at $———.   Plaintiff's counsel filed a petition for a rehearing on the twenty-seventh, which was denied, and a motion to vacate the judgment as to costs and disbursements, filed June 21, on the ground that it had been prematurely entered, was also denied.   Objections to said items of the cost bill were filed June 25, supplemented by the affidavit of Lansing Stout, deputy clerk of the circuit court of Multnomah County, showing that the sum charged for the transcript was $251.50, upon which the appellants were credited with $82.65 for copies furnished by them and included therein, and by the affidavit of S. B. Schwab, a member of the firm which printed the abstract and brief, to the effect that the sums paid in full settlement

therefor were $307.50 and $128.50, respectively. Defendants' counsel on July 5, in pursuance of an order of this court extending the time for that purpose, filed a counter affidavit supplemented by the following statement of account:

> State of Oregon, County of Multnomah, in the Circuit Court.
> *Thos. J. Hammer* v. *F. O. Downing et al.*
> Woodward & Palmer to Dan J. Moore, Clerk of the Circuit Court, *Dr.*
> September 23, 1898.  Copying transcript, etc._____ $346 15
>                                    *Cr.*_____ 177 30
>                                                                            _____
> September 22, '98.  Received payment_____ $168 85
>                                                                     DAN J. MOORE.

It appears from the latter affidavit that this bill is in the handwriting of the deputy, but that the indorsement of the receipt of payment, and the signature appended thereto, were made by the clerk; that the affiant called upon Stout and showed him said statement, and was informed by him that the books in the clerk's office contained a memorandum of the facts as stated in his affidavit made at plaintiff's request; that the affiant also saw Dan J. Moore, who told him that said bill was correct and made, as indicated, at the request of C. C. Palmer, one of defendants' attorneys, to include the cost of copies of papers furnished by him, and used in making the transcript. The clerk August 13, 1901, allowed the defendants' cost bill in full, on the ground that the objections thereto were not filed within the time prescribed by law, and two days thereafter plaintiff's counsel filed a motion to retax the costs.

13.   The statute prescribing the time and manner of filing a verified statement of the costs and disbursements necessarily incurred in the trial of a suit or action in the lower court is to be regarded as the rule of procedure in this court: Hill's Ann. Laws, § 556; *Rader* v. *Barr*, 37 Or. 453 (61 Pac. 1027, 1127).

14.   It is argued by plaintiff's counsel that, although the objections to the cost bill were not filed within the time prescribed by law, defendants, having filed a counter affidavit, thereby waived the default, while defendants' counsel insist that the action of this court in overruling the motion to set aside the judgment in respect to the costs was an adjudication upon the matter now in issue. The former motion was to vacate the judgment as far as it related to any costs, while this motion concedes the right of the defendants to recover disbursements necessarily incurred, but denies that the sums claimed for the several items thereof controverted by the objections are correctly stated. ' The former motion challenged the right of the clerk to enter any judgment for costs within the time allowed to file a petition for a rehearing, and not the amount thereof.   No item of the cost bill was contested upon the former motion, and the evidence necessary to support it would not be received upon the motion under consideration.   When the plea of *res adjudicata* is interposed, the admissibility of the same evidence to support both cases is one of the chief tests in determining whether an adjudication in one action is a bar to another : *Taylor* v. *Castle*, 42 Cal. 367 ;   *Duncan* v. *Stokes*, 47 Ga. 593 ;  *Rice* v. *King*, 7 Johns. 20 ;  *Brown* v. *Cain*, 79 Ind. 93 ;  *Hahn* v. *Miller*, 68 Iowa, 745 (28 N. W. 51).   Tested by this rule, the motion to retax the costs was not involved in the former motion, and the court's refusal to vacate the judgment in respect thereto was not an adjudication upon the cost bill, nor a determination that any item thereof was reasonable.

15.   This brings us to a consideration of the question whether the defendants, by filing a counter affidavit in support of an item of the cost bill, waived their right to insist that plaintiff's objections should have been filed

within the time prescribed by law.    The rule is well set-
tled that a party may waive any provision of a statute
designed for his benefit, unless by doing so the rights of
the public are necessarily involved :   *Tombs* v. *Rochester*,
*etc. R. R. Co.* 18 Barb. 583 ;  *White* v. *Insurance Co.* 4 Dill.
177 (Fed. Cas. No. 17545);  *Shutte* v. *Thompson*, 82 U. S.
(15 Wall.) 151;  *Keyser* v. *Pollock*, 20 Utah, 371 (59 Pac.
87).    Mr. Justice RAPALLO, in *Phyfe* v. *Eimer*, 45 N. Y.
102, in discussing this subject, says :  ''A party of full
age, and acting *sui juris*, can waive a statutory or even a
constitutional provision in his own favor, affecting simply
his property or alienable rights, and not involving con-
siderations of public policy.''   The time allowed by law
to object to a cost bill is a limitation upon the right to
controvert any item thereof, and is a statutory provision
designed for the benefit of the prevailing party to a judg-
ment.    An appearance for the purpose of objecting to
irregularities does not waive them, but, if the appear-
ance is for any other purpose, it is a waiver, and no ob-
jection can afterwards be taken to the prior defects :  *Lane*
v. *Leech*, 44 Mich. 163 (6 N. W. 228).    Thus, in *State ex
rel.* v. *Messmore*, 14 Wis. 115, it was held that a stipula-
tion for further time to plead was an appearance in an
action, and waived all objection to the form of the sum-
mons.    In the case at bar, the defendants, having filed a
counter affidavit in response to the objections interposed
to their cost bill, thereby waived the right to insist that
such objections had not been filed in time ;*   and, this
being so, the question to be considered is the reasonable-
ness of the controverted items.

16.    The evidence clearly shows that the defendants
incurred on account thereof no more than the following

*NOTE.—See *Smith* v. *Day, post.*
    39 OR.—34.

sums : Clerk's fees in preparing transcript, $168.25 ;
printing abstract and brief, $307.50 and $128.50, respec-
tively.    Their cost bill will therefore be reduced to the
extent of $399.90 on account of the overcharges.

17.    It is maintained by plaintiff's counsel that the
abstract and brief contained much immaterial matter,
the publication of which is not a proper charge, and that
by eliminating the unnecessary part the abstract and
brief would be reduced to seventy-three and thirty-nine
pages, respectively.    The abstract contains an original
and amended answer, the former containing twenty-two
and one half pages, the cost of which, at the rate paid
therefor, is $13.90, which, in our judgment, is not a
proper charge, as the original answer was rendered nuga-
tory by the amended pleading, and the expense for the
publication thereof is not a taxable disbursement under
Rule 24 : *Albert* v. *Salem*, 39 Or. 466 (66 Pac. 233).    The
cost bill will therefore be further reduced to the extent
here indicated, but in other respects approved.    The
brief may be somewhat voluminous, but the size thereof
must be left largely to the discretion of counsel, to be
determined by what their judgment may dictate the im-
portance of the case demands.          COSTS RETAXED.