[No. 16141.  Department Two.  March 31, 1921.]

JOHN HAJDUK, *as Guardian ad Litem of Julia Hajduk,*
*Respondent,* v. GRAYS HARBOR RAILWAY & LIGHT
COMPANY, *Appellant.*[1]

TRIAL (63)—PROVINCE OF COURT AND JURY—JUDGMENT NON OB-
STANTE.  A motion for judgment notwithstanding the verdict should
be granted only when the court can say, as a matter of law, that
there is neither evidence nor reasonable inference from evidence
sufficient to sustain the verdict.

STREET RAILROADS (17)—OPERATION—INJURIES TO CHILDREN.  In an
action against a street railway company for personal injuries inflicted
upon a child two years of age, the evidence presents a question for
the jury when it shows she was lying between the rails in a resi-
dential district; that she was dressed in a white dress; that the
motorman did not notice her until within twenty-five or thirty feet
of her, though he kept a lookout for persons who might be on the
track; and that he stopped the car as quickly as he could at a dis-
tance of ninety-five or one hundred feet beyond where he hit the
child.

Appeal from a judgment of the superior court for
Grays Harbor county, Reynolds, J., entered August 28,
1920, upon the verdict of a jury rendered in favor of
plaintiff, in an action in tort.  Affirmed.

*Theodore B. Bruener,* for appellant.

*A. Emerson Cross,* for respondent.

MITCHELL, J.—Julia Hajduk, a minor two years of
age, brought this action by her guardian *ad litem* to
recover damages for personal injuries sustained by her
on January 29, 1920, by being struck by a street car
alleged to have been negligently operated by the Grays
Harbor Railway & Light Company.  The jury returned
a verdict in favor of the plaintiff in the sum of $500.
The defendant moved for judgment notwithstanding
the verdict, which motion was denied.  A new trial was

[1]Reported in 196 Pac. 625.

not requested. From a judgment on the verdict, the defendant has appealed.

The material facts are briefly as follows: The accident occurred on Division street near the outer limits of the city of Aberdeen, at a point in close proximity to a number of residences, a barber shop and a grocery store. The street was planked on each side of the street car track, and had a walkway on only one side. Except at crossings, the street was not used much by vehicles, but was generally used by pedestrians, including children, living in the vicinity and others who found the way convenient. The single street car track was located in the center of the street and was constructed with a parallel board on the inside of each rail of the car track —otherwise, between the rails the ties of the roadbed were exposed, except at the street crossings. The residence of the family, of which the child was a member, was situated about twenty-five feet from the street. The child was injured by the street car at a point about opposite the residence, from whence in the direction from which the car approached the track was straight for a distance of four or five blocks. The accident occurred about ten fifty o'clock in the morning. The child had strayed from the residence, where both of its parents were at work, only about five minutes before it was hurt, unnoticed by its parents or other members of the family. No one saw the child on the track until after the injury, except the motorman of the street car. His account of the accident was that the street was unobstructed by any person, automobile or other vehicle; that his car was running about fifteen miles an hour; that he kept a lookout for persons that might be on the track; and that,

"glancing ahead within twenty-five or thirty feet I saw a little child lying between the ties. All I could see was

its head and shoulders, as if it had just raised up. Of course I stopped my car as quick as I could, put on the emergency, and stopped probably within ninety-five or one hundred feet from where I hit the child."

The child was unconscious, having received some superficial wounds about the head and body, and a broken thigh. Its parents were immediately made aware of the trouble and at once the child was taken by the same street car to the hospital. At the place of the accident, the ties of the roadbed were exposed. As to the depression of the ballast below the surface of the ties at the place of the accident, the father of the child testified, first under cross-examination, that it was all the way from one to five inches, and later under the examination by his own counsel:

"Q. Is there any place between the ties where the baby could lie down in? A. No. Q. So that you could not see the baby? A. There is no place. Any holes you mean? Q. Yes. A. No, that place is just level where baby was, just level. Was lots of holes by my house on the crossing, across First street. but that place is level. There is no holes between the ties. Just a little hole, 4 inches, 3 inches some places, and some 6 or 7 inches."

The child was active for its age, and the evidence for the respondent shows she had on a clean white dress when she strayed from the house. As to the color of her dress, however, the motorman and conductor of the street car were not so certain. There was a dispute as to the weather conditions, about the time of the accident. Appellant's proof was to the effect that it rained early in the morning, that there was a slight mist falling about eleven o'clock and thereafter cloudy during the day. On the contrary, respondent's proof showed that while there was a light rainfall early in the morning, it cleared away about ten thirty to eleven o'clock

and the sun was noticed to be shining brightly as the child was being taken to the hospital.

The course of the appellant in relying on its motion for a judgment notwithstanding the verdict demanded of the trial court, as it does of this court, a decision including no element of discretion.

"It can only be granted when the court can say, as a matter of law, that there is neither evidence nor reasonable inference from evidence sufficient to sustain the verdict." *Brown v. Walla Walla,* 76 Wash. 670, 136 Pac. 1166. It seems to us the evidence summarized above, taken in connection with the commanding viewpoint of the motorman standing upon the platform of the car, made it plain that the motion was properly denied by the trial court.

The law imposes upon the motorman, in the operation of a street car, the duty of keeping a reasonably careful lookout for those who may be on or dangerously near the track, so as to avoid injury if possible, and, as stated by counsel for appellant in his brief, "it is quite true that the question whether one did actually look or see cannot in all cases be left to the bare statement of the observer." Obviously this is such a case, notwithstanding the contention of counsel that the motorman was supported by the physical facts. By this contention, we understand the appellant to argue that both of two things must be determined as matters of law: First, that the child was lying on the ground between the ties; and second, that a reasonably careful lookout by the motorman is not inconsistent with his failure to observe a two-year-old child, in a white dress, possibly in a depression ranging from nothing to six or seven inches, until he got within twenty or twenty-five feet of the child, or any other distance as to that matter, which

would have allowed him reasonable opportunity to stop the car before he struck the child. The contention is without convincing force. Authorities cited by counsel do not dissuade one from the view that this was a case for a jury. It is a case in which there were questions of fact to be considered by the jury in weighing the evidence, solving its conflicts and determining whether or not there was negligence on the part of the motorman, and if that negligence was the proximate cause of the injuries. The record is ample to sustain a verdict.

Judgment affirmed.

PARKER, C. J., and TOLMAN, J., concur.