[No. 25843. Department Two. November 12, 1935.]

VIRGINIA MITCHELL, *as Administratrix, et al., Appellants*, v. MAYTAG-PACIFIC-INTERMOUNTAIN COMPANY, *Respondent*.[1]

*Joseph H. Griffin* and *Harvey F. Davis*, for appellants.

*Roberts & Skeel* and *W. R. McKelvy*, for respondent.

BEALS, J. — The defendant Maytag-Pacific-Intermountain Co., a corporation (hereinafter referred to as Maytag or respondent), is engaged in business as a vendor of washing machines and other mechanical appliances; and for some years prior to July, 1933, de-

[1]Reported in 51 P. (2d) 393.

fendant J. W. Grosso had been in its employ, as district manager up to May 1, 1933, and thereafter as a salesman. C. M. Jett succeeded Mr. Grosso as branch manager for a district in the north central part of this state, with headquarters at Omak, Grosso being one of the salesmen under his jurisdiction.

Mr. Grosso was assigned to a territory rather indefinite in extent, working on a commission basis and using an automobile which was his own property. He had caused to be constructed on the back of his car a platform, upon which to carry washing machines, and had placed on each side of his car in a conspicuous position the word ''Maytag'' and the company's emblem. His duties consisted of selling Maytag appliances and servicing and repossessing same on occasion; it also being his duty to make some collections, for which he gave regular Maytag receipts from a book furnished him by Mr. Jett. Mr. Grosso was employed by no person other than Maytag and, prior to July 1, 1933, received, in addition to his regular commission, a bonus upon certain sales.

July 1, 1933, Mr. Grosso, while driving his automobile over a road in Chelan county, collided with a car driven by Walter E. Mitchell, in which Sigurd Seim was riding as a guest. As a result of injuries received in the collision, Mr. Mitchell died and Mr. Seim was severely injured. Thereafter, plaintiff Virginia Mitchell was appointed administratrix of her late husband's estate and brought suit against Maytag, asking for damages in a large sum on her own behalf and on behalf of her three minor children. Mr. Seim also sued for his injuries, the two actions having been consolidated for the purposes of trial. A third car, driven by one L. E. Pruitt, was concerned in the collision, and Mr. Pruitt was named as a defendant in the actions, as was also Mr. Grosso.

The jury returned a verdict against Maytag in favor of plaintiff Virginia Mitchell in the sum of three thousand dollars; they awarded each of the three minor children one thousand dollars, and awarded Mr. Seim fifteen hundred dollars. It does not appear from the transcript that any verdict was rendered against defendant Pruitt. From the copy of the verdict before us, it appears that the same was rendered against Maytag alone, but in the judgment it is recited that the jury found against defendants Maytag and Grosso jointly.

The trial court granted Maytag's motion for judgment in its favor notwithstanding the verdict and, plaintiffs having moved for a new trial, directed that, in the event the judgment of dismissal, based upon the order granting judgment notwithstanding the verdict, should be reversed, plaintiffs' motion for a new trial should be granted. From the judgment dismissing the action as to defendant Maytag, Virginia Mitchell and Sigurd Seim, as joint plaintiffs, have appealed.

No party has appealed from the alternative judgment entered by the trial court granting plaintiffs' motion for a new trial in case this court should determine that the trial court erred in granting Maytag's motion for judgment in its favor notwithstanding the verdict.

The sole question before us is whether or not, at the time of the accident, J. W. Grosso was Maytag's agent to such an extent as to render Maytag responsible for any negligence of which Grosso might be guilty in driving his automobile in such manner as to cause injury to a third party. The parties agree that this is the only question presented on this appeal.

It appears that Maytag's salesmen, in disposing of washing machines, occasionally accepted as part payment other mechanical appliances, but that, as they

were required to deliver cash to Maytag, any such deal was strictly on their own account, and they disposed of, as their own property and to their own advantage, any machines or other articles which they accepted and credited as cash on the purchase price of any of Maytag's products. Mr. Grosso, having in some manner acquired a gasoline motor, was anxious to dispose thereof and, with that end in view, had made a deal with one Walter Manning, who resided on the highway running between Chelan and Wenatchee. It clearly appears that, in dealing with Mr. Manning, Mr. Grosso represented himself alone and not Maytag.

Not long prior to July first, Mr. Grosso, desiring some small credit at a garage not far from Wenatchee, had left as security for what he received the motor which he subsequently traded to Mr. Manning. Upon learning that Mr. Manning desired a motor, Mr. Grosso, about June 23rd, left at the garage as security in place of the motor a washing machine belonging to Maytag, which he was using as a demonstrator. Mr. Manning, as part of the deal, agreed to pay the garage the amount which Grosso owed, but, becoming dissatisfied with the exchange, telephoned the garage that he would not pay the bill.

June 30th, Mr. Jett, being short of washing machines, instructed Mr. Grosso to go to the garage where the washing machine was in pledge and pick it up. The morning of July 1st, Mr. Grosso started on this mission. He first called at the office of Mr. Sheridan, Maytag's agent in Chelan, but, not finding him, decided to proceed to Mr. Manning's ranch in an endeavor to straighten out the deal with him, expecting to pick up the washing machine on the way back to Omak. Mr. Manning was busy and refused to discuss the matter until after five o'clock. Grosso then once more sought Mr. Sheridan, whom he finally located.

Grosso then started back to Mr. Manning's house, and on the way there the collision occurred which resulted in Mr. Mitchell's death and Mr. Seim's injury. Later on the afternoon of the accident, Mr. Grosso resumed his journey to Mr. Manning's, picked up the motor with which Mr. Manning was dissatisfied, returned to the garage and took possession of the washing machine, which he delivered to Mr. Sheridan, in accordance with instructions from Mr. Jett.

Within a few days, Mr. Grosso advised the Maytag office at Portland of the accident, stating his version of the circumstances in connection therewith. As above stated, for the purposes of this appeal, it is assumed that the jury correctly found that Mr. Grosso, by reason of his negligence, was responsible for the collision.

On the trial, appellants called Mr. Grosso, stating in their brief that they called him as an adverse witness. It appears that, at the time of the trial, Mr. Grosso was no longer in Maytag's employ, and respondent argues that it appears from Mr. Grosso's testimony that he was antagonistic to his former employer and was endeavoring to testify as strongly as possible in appellants' favor. The witness frankly stated that he had had a controversy with Maytag over some commissions, which he claimed were due him and later collected; and that, when Mr. Jett superseded him as district manager at Omak, he had resented the way Mr. Jett had approached him. In reply to the question, "In fact, you feel rather adverse towards them in this case, don't you?" he answered, "Well, after the way they turned me down in this case, yes." In any event, Mr. Grosso was not testifying as a witness in a case in which his then employer was a defendant.

We shall now consider the question to be determined: Was the relationship between Mr. Grosso and

Maytag, at the time of the accident, such as to render respondent responsible for Mr. Grosso's negligence? Upon this question, there is little conflict in the evidence.

We are satisfied that the deal between Messrs. Grosso and Manning was strictly the former's personal business. It is also clear that Mr. Grosso was driving his own car, in connection with which he bought the license and paid all expenses of operation. It was also established that Mr. Grosso, in the course of his employment, worked his territory as he pleased; and that, although he had assigned to him a vaguely defined district, he could follow a prospect into other territory and sell his wares therein, on which sales he would receive a commission. He was allowed the use of a washing machine as a demonstrator, being accountable to the district manager for that and for other machines delivered to him. Upon making a sale, he collected some payment on account, which, with the contract, was turned over to the district manager, whereupon the deal was either approved or disapproved.

Mr. Grosso testified that, when he first became associated with Maytag, one of the conditions of his employment was that he own an automobile. He later testified, however, that the company had nothing to do with the manner in which he traveled through his territory. In answer to the following question, propounded to him on cross-examination: "They didn't care whether you rode the busses, or on the train, drove your own car, or walked, did they?" he answered, "No, sir."

Mr. Grosso testified that Mr. Jett had told him that he (Grosso) could not obtain possession of the washing machine which had been left at the garage until he paid not only the amount he owed the garage but also adjusted the deal with Mr. Manning. It is undisputed,

however, that Grosso owed the garage five dollars and no more, and that this sum constituted all the claim on the part of the garage against Grosso or the washing machine.

Mr. Garton, the manager of the garage, testified that he and Mr. Manning were friends, and that Mr. Manning had married his cousin. He further stated that Mr. Manning had told him that the motor which Mr. Grosso had traded to him was not as represented, that he wanted to trade back, and that Mr. Garton should hold on to the washing machine and not deliver it to Mr. Grosso. The witness stated that he might have mentioned this matter to Mr. Jett or Mr. Sheridan. It appears, however, that Mr. Garton's garage had no claim against the washing machine or Mr. Grosso, save for the five dollars which the latter owed the garage, and Mr. Garton admitted that he knew this.

Appellants open their argument by stating the proposition that a motion for judgment notwithstanding the verdict will be granted only when it can be said as matter of law that there is neither evidence nor reasonable inference from evidence sufficient to sustain the verdict, and that on appeal from an order granting judgment notwithstanding the verdict the evidence must be considered in the light most favorable to the appellant. *Hajduk v. Grays Harbor R. & L. Co.,* 115 Wash. 217, 196 Pac. 625; *Bell v. Northwest Cities Gas Co.,* 164 Wash. 450, 2 P. (2d) 644; *Connolly v. Derby,* 167 Wash. 286, 9 P. (2d) 93.

On the main question, appellants rely upon the case of *Wilson v. Times Printing Co.,* 158 Wash. 95, 290 Pac. 691, in which a judgment in favor of a father, based upon damages suffered by reason of the killing of his minor child, was affirmed. In the case cited, the question was, as here, whether or not the driver of a motor vehicle, who negligently injured another, was

the agent or servant of the defendant or an independent contractor. The defendant was the publisher of a daily newspaper and was, of course, interested in the delivery of its paper over many city and suburban routes.

One Maxwell, a lad seventeen years of age, entered into a contract with the defendant, according to the terms of which he was to deliver papers to subscribers along a rural route approximately forty-five miles in length, he to furnish his own automobile. He received ninety-eight dollars per month for his services and the use of his car. He testified that the representative of the paper instructed him to take the papers as soon as they were delivered at a certain station, and that the delivery to the subscriber should be expedited as much as possible. He was to make collections by the tenth of each month, and was from time to time instructed as to the obtaining of new subscribers. He was told that if he did not get the papers to the subscribers properly, or if he could not handle the work, he would be discharged. The defendant furnished him receipt forms, which he used in collecting from the subscribers. He paid the defendant for the papers which he delivered. The representative of the defendant who hired Maxwell testified that he had general oversight of the carriers, with authority to hire and discharge; that his office furnished Maxwell names of new subscribers; and that he instructed the drivers as to all matters in connection with the delivery of the papers. This court held that, from the evidence, it appeared that the defendant retained a substantial measure of control over Maxwell in the performance of his work under the contract, and that, for this, and other reasons assigned, the trial court properly held that it could not be decided, as matter of law, that Maxwell was an independent contractor.

The court also called attention to the fact that Maxwell's compensation was, in part, upon the basis of a monthly wage; and that, when a customer desired his paper placed on his porch, the defendant would make some investigation concerning the facts, and if the request was deemed proper, would order Maxwell to comply therewith. Manifestly, the defendant reserved and exercised a very considerable measure of control over Maxwell, instructing him as to many details in connection with his work, with the intent not only of assuring the delivery of the papers to the subscribers, but also with the object of building up a permanent good will among its patrons.

Evidently, the defendant in the case cited exercised a far greater measure of control over Maxwell than did Maytag over Grosso in the case at bar. The case is not controlling here.

Appellant next cites the opinion filed in the case of *Dishman v. Whitney,* 121 Wash. 157, 209 Pac. 12, 29 A. L. R. 460. This opinion, as published, never became a decision of this court, and, for reasons stated by the court in the case of *Nettleship v. Shipman,* 161 Wash. 292, 296 Pac. 1056, the opinion is not authority. The reasoning of the opinion, based upon the facts as stated, may, of course, be used as a basis for argument, but the opinion, not constituting a decision of this court, is not authoritative.

Appellants cite the case of *Norwegian Danish M. E. Church v. Home Telephone Co.,* 66 Wash. 511, 119 Pac. 834, in which was recognized the principle that, where under a given state of facts the theory of agency is as reasonable as that of independent contractor, the burden rests upon the party asserting the latter proposition to show the real relationship of the parties; whether this be a mixed question of law and

fact, or of law alone. We do not criticize this principle, and adopt it for the purposes of this case.

Respondent cites the early case of *Ziebell v. Eclipse Lumber Co.*, 33 Wash. 591, 74 Pac. 680, in which this court recognized the ''independent contractor'' doctrine, holding that the operator of a shingle mill, who employed his own men and was to receive an agreed sum per thousand for shingles manufactured, was not an agent, for whose negligence the owner would be liable. This principle was recognized in the later case of *Seattle Lighting Co. v. Hawley*, 54 Wash. 137, 103 Pac. 6.

A question very similar to that here presented was considered by this court in the case of *Nettleship v. Shipman*, 161 Wash. 292, 296 Pac. 1056. In that case, the defendant Shipman, a salesman representing a corporation engaged in business as a wholesale dealer in hospital and surgical supplies, was assigned to a large territory, which he covered at his own expense, using generally, as means of transportation, his own automobile. He received a stipulated amount each month, which his employer referred to as a ''drawing account,'' and in addition, at the end of each year, any difference which existed in his favor between an agreed percentage of his gross sales and the amount which he had received monthly. In an action against Shipman and his employer for the recovery of damages suffered by persons injured in a collision between Shipman's automobile, driven by himself, and another car, the trial court rendered judgment in favor of plaintiffs against both defendants.

On appeal, this court held that, as matter of law, the employer was not liable under the doctrine of *respondeat superior,* and the judgments against the employer were reversed and the actions ordered dismissed. The cases of *Wilson v. Times Printing Co., supra,* and

*Buckley v. Harkens,* 114 Wash. 468, 195 Pac. 250 (relied upon by appellants), were discussed and distinguished, as were several other cases. In the course of the opinion, we said:

"Appellant exercised at least some control over Mr. Shipman in the exploiting by him of his territory; it is evident that he was required to cover certain portions thereof once every thirty or sixty days, and that he was supposed to go to Montana three times a year. This control was very general in its nature, appellant being interested only in the results its agents produced, and it is evident that Mr. Shipman was, generally speaking, free to tour his territory at such times and to such extent as he deemed most advantageous.

"Appellant knew that Mr. Shipman owned and often used, in the prosecution of his business, an automobile, but appellant did not instruct him to purchase a car, nor did it at all concern itself with the means of transportation adopted by its salesmen on any particular trip, or in covering any particular territory. Appellant's officers could tell, with some degree of accuracy, by the volume of orders sent in by one of its salesmen, and from the places the orders were taken, whether or not such employee was devoting a proper amount of his time and attention to his work, but it does not appear that any particular check was made by appellant over its traveling salesmen, other than some such general observation. . . .

"In the case at bar, the defendant Shipman could cover his designated territory by any means which he deemed adequate, and, in so doing, he paid all of his own expenses. The automobile which he was driving at the time of the accident was his own property, or, at least, was being purchased by him under a contract of conditional sale, in which appellant was not concerned. Mr. Shipman took out the license for the car himself in his own name, and paid all necessary expenses in connection with the upkeep and operation of the machine.

"The question here presented is not free from difficulty, but we conclude that the better rule is that, under the circumstances disclosed by the evidence contained

in the record in this action, appellant should not be held liable to respondent under the doctrine of *respondeat superior,* and that the judgments in favor of respondents and against appellant must be reversed, and the actions, as to appellant, dismissed. It is so ordered.''

In the case of *Leech v. Sultan R. & T. Co.,* 161 Wash. 426, 297 Pac. 203, this court used the following language:

''An independent contractor is one who engages to perform a certain service for another, according to his own manner and method, free from control and direction of his employer in all matters connected with the performance of the service, except as to the result of the work;''

and quoted the following text from 31 C. J. 474:

''The principal consideration in determining the question is the right to control the manner of doing the work. Generally speaking, it may be stated that, if the employee is under the control of the employer, he is a servant or employee and not an independent contractor, but, if in the performance of the work he is not under the control of the employer, he is an independent contractor. However, it is not the actual exercise of the right of interfering with the work, but the right to control which constitutes the test;''

which text had been quoted by this court with approval in the case of *Swam v. Aetna Life Ins. Co.,* 155 Wash. 402, 284 Pac. 792.

While in the case at bar, it appears that Mr. Jett, on the morning of June 30th, called at Mr. Grosso's home and asked him when he was going to Chelan to get the washing machine which had been left at the garage, stating further when Mr. Grosso answered that he was going the next day, ''All right, if you don't go, I am going to have to, and if I do it will look bad for

you,'' as testified by appellants' witness Harriett Forster and in substance by Mr. Grosso's wife, this is far from indicating any direct control by Mr. Jett over Mr. Grosso's work. Mr. Grosso had left at the garage, as security for his own debt, a washing machine belonging to Maytag, which an agent of the latter needed, as there was a shortage of machines. It might well be argued that Mr. Jett recognized the fact that he had no right to order Mr. Grosso to pick up the machine forthwith, as he evidently contemplated doing this job himself if Grosso did not.

Respondent also cites the case of *MacDonald v. Gillio,* 181 Wash. 673, 44 P. (2d) 783, in which a judgment rendered on the verdict of a jury in favor of one injured in an automobile collision was reversed upon the ground that the general employment of the negligent driver by the appellant was not established. In considering the question, the court assumed that the respondent had made a *prima facie* case which warranted the inference of agency, but concluded that, from the entire evidence, considering that it clearly appeared that, on the day of the accident, the driver was not working for the appellant, the *prima facie* case was overcome.

From the evidence in the case at bar, it appears that there was assigned to Mr. Grosso a vaguely outlined territory within, and to some extent without, which he was authorized to find purchasers for respondent's products; that, in working his territory, he generally used his own automobile, paying all the expenses connected with the operation thereof, and paying also his own expenses. Mr. Grosso was not required to use an automobile in canvassing his territory, but could use any method of transportation which he deemed advisable. He received no salary, or even a drawing account, being compensated strictly upon a commission

and sometimes a bonus basis, computed entirely upon his sales. It does not appear that, outside of certain general rules, Maytag had authority to prescribe Mr. Grosso's method of operation, and it clearly appears that, at the time of the accident, Mr. Grosso was on a mission in which he alone was interested.

The facts that respondent on several occasions paid Mr. Grosso's expenses to certain group meetings of its employees, that he reported the accident to respondent's headquarters at Portland, that he placed the Maytag name and emblem on his automobile, and that respondent furnished him blank forms upon which to give receipts for money collected, do not require a ruling that his relation to respondent was that of agent.

Many authorities are cited by the parties, but we conclude that this case falls within the principle of the case of *Nettleship v. Shipman, supra,* and that the trial court did not err in rendering judgment in respondent's favor notwithstanding the verdict.

The judgment appealed from is accordingly affirmed.

MAIN, BLAKE, HOLCOMB, and TOLMAN, JJ., concur.