[No. 18835. Department One. December 16, 1924.]

INEZ MAUDE HUTCHINGS, *Appellant*, v. T. B. FANSHIER
et al., *Respondents.*[1]

WILLS (74)—NONINTERVENTION WILLS — CONSTRUCTION — SALE OF PROPERTY—CONSIDERATION—POWERS OF EXECUTOR. A non-intervention will, empowering the executor to sell lands "when in his judgment necessary for the best interest" of the estate, authorizes only a sale for an entire cash consideration, and does not authorize an indivisible transaction whereby part was paid in cash and part by the cancellation of deceased's loans, and which was, in a large measure, an exchange for other property.

Appeal from a judgment of the superior court for Thurston county, Wright, J., entered May 12, 1924, in favor of the defendants, dismissing an action to set aside a deed, tried to the court. Reversed.

*Lyle, Henderson & Carnahan* (*M. F. Gose,* of counsel), for appellant.

*A. J. Falknor* and *Troy & Yantis,* for respondent.

PARKER, J.—The plaintiff, Mrs. Hutchings, nee Fanshier, seeks a decree setting aside a deed executed by her father, the defendant T. B. Fanshier, as the executor of the will of his deceased wife, her mother, purporting to convey to the defendant oyster company the interest of the deceased wife and mother at the time of her death in and to certain lands, principally oyster lands in Thurston and Mason counties, in this state; the defendant Fanshier having assumed the power to so execute the deed under the provisions of the non-intervention will of the deceased wife and mother. A trial upon the merits in the superior court for Thurston county resulted in a denial by the court of the relief prayed for and the entry of a judgment

[1]Reported in 231 Pac. 14.

of dismissal accordingly, from which the plaintiff has appealed to this court.

The controlling facts are not in dispute and may be summarized as follows: On May 3, 1904, appellant, Mrs. Hutchings was born. On April 24, 1905, Maude C. Fanshier, the wife and mother, made her last will and testament, reading as follows:

"I, Maude C. Fanshier, of Olympia, Thurston County, Washington, being of sound and disposing mind and memory, and not acting under duress, menace, fraud or undue influence of any person whatever, do make publish and declare this my last will and testament in manner following that is to say:

"First, I give bequeath and devise unto my beloved daughter Inez Maude Fanshier, all the property both real and personal of every kind and nature whatsoever owned by me at the time of my death save and except and subject to the estate in a portion of my real property hereinafter bequeathed and devised to my beloved husband T. B. Fanshier.

"Second: I give bequeath and devise unto my said beloved husband T. B. Fanshier the rents and income from my real estate and oyster land until my said beloved daughter shall have attained the age of 18 years, at which time everything shall revert to her.

"Third: I hereby nominate and appoint my said husband T. B. Fanshier, executor of this my last will and testament and direct that he be not required to give bond.

"I furthermore will and direct that my said executor shall proceed under Section 6196 Ballingers Code of the State of Washington providing for the administration of estates without the interference or intervention of the Court. It being my intention to give my executor power and authority to proceed under said section of said code and my wish that he do so; I hereby giving him every power therein required and specifically giving him power to sell all and any real estate when in his judgment necessary for the best interests of said estate."

On April 26, 1905, Maude C. Fanshier, the wife and mother, died. On May 15, 1905, the will was duly admitted to probate in the superior court for Thurston county and the appointment of T. B. Fanshier as executor by the terms of the will was by the court confirmed. From June 2d to 30th, inclusive, 1905, Fanshier, as executor, caused due notice to creditors to be published. On July 27, 1905, Fanshier, as executor, caused an inventory of the property of the estate, including the property here in question, to be duly made and filed. On July 27, 1905, the superior court duly entered an order adjudicating the estate to be solvent, and directing Fanshier, as executor, to proceed to administer the will in accordance with its provisions without further intervention of the court. On September 22, 1913, Fanshier entered into a contract with the defendant oyster company by which the oyster company was to work the oyster lands in question and market the oysters taken therefrom for a period of three years, and to receive from the proceeds thereof twenty-five cents per sack of oysters so marketed, plus the cost of culling. In this contract the oyster lands are referred to as "the oyster beds inherited by the party of the first part [Fanshier] and his daughter from the first wife of the party of the first part, and being the oyster lands which the party of the first part has the use of until his daughter Inez Fanshier attains the age of eighteen years." Simultaneously with the making of this contract, the oyster company loaned to Fanshier individually the sum of $3,000, with the understanding that such loan should be repaid from moneys coming to Fanshier from the marketing of the oysters, Fanshier to be personally liable for any deficiency.

On December 10, 1913, Fanshier entered into a supplemental contract with the oyster company extending the term of the contract of September 22, 1913, an ad-

ditional one year; that is, making the term four years. Simultaneously with the making of this contract, the oyster company loaned Fanshier individually an additional $500 to be paid in the same manner as the former $3,000 loan. On June 16, 1914, Fanshier entered into a further supplemental contract with the oyster company extending the term for its working of the oyster lands several years beyond the terms of the contracts of September 22 and December 10, 1913. Simultaneously with the making of this contract, the oyster company loaned Fanshier individually an additional $2,500 to be paid in the same manner as the former loans of $3,000 and $500. On April 22, 1915, no appraisement of the estate having been made, though an inventory had theretofore been made and filed as above noticed, an appraisement of the estate was duly made and filed, showing the entire estate to be of the value of $9,750 at the time of the death of the wife and mother, thus demonstrating that no inheritance tax ever became due the state. On April 22, 1915, the deed which is here sought to be set aside was executed by Fanshier, wherein it is recited, among other things, as follows:

"This indenture made this 22nd day of April, 1915, at Olympia, Washington, by and between T. B. Fanshier in his own right, and as the duly appointed, qualified and acting executor and trustee of the Estate of Maude C. Fanshier (sometimes known as Maude Fanshier and Maud Fanshier and Maud C. Fanshier, (formerly Maud Gale), deceased, party of the first part, and J. J. Brenner Oyster Company, a corporation, party of the second part.

"Witnesseth: That Whereas, on the 26th day of April, 1905, the said Maude C. Fanshier departed this life, leaving a last Will and Testament by the terms of which she made the undersigned, T. B. Fanshier executor of her last Will and Testament without bond, and giving him full power and authority to proceed under

the laws of the State of Washington to administer her estate without the intervention of any court, and giving him specific power to sell any and all real estate when in his judgment necessary for the best interests of said estate, and

"Whereas, the said Will was duly admitted to probate and the said T. B. Fanshier duly appointed executor thereof, and the estate duly decreed to be solvent, and notice to creditors having been published, all of which proceedings are on file and of record in the probate of the estate of the said Maude C. Fanshier, deceased, in Thurston County, Washington, and being probate files No. 1068, and which are hereby referred to and made a part of this indenture, and

"Whereas, the executor and trustee of said estate deems it for the best interests of said estate and necessary in his judgment for the best interests of the said estate to sell and convey the hereinafter described real estate.

"Now, Therefore, said T. B. Fanshier in his own right and as executor of the estate of the said Maude C. Fanshier, deceased, as aforesaid, party of the first part, pursuant to the authority and power vested in him by the said last will and testament of deceased and for and in consideration of the sum of ten (10) dollars in lawful money of the United States and other good and valuable consideration, to him in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, has granted, bargained, sold and conveyed and by these presents does grant, bargain, sell and convey unto the said party of the second part.     .     .     .     "

(Here follows description of real property constituting property of the estate of the deceased wife and mother.)

The consideration passing from the oyster company for the making of this deed was the cancellation of the loans aggregating $6,000 theretofore made by the oyster company to Fanshier individually, no part of those loans having been repaid, the transfer of real property

by the oyster company of the agreed value of $8,500, and the payment by the oyster company of the sum of $20,500, the entire consideration for the conveyance being the agreed value of $35,000. It is alleged and admitted in the pleadings that the property so attempted to be conveyed by this deed was at that time of the value of $35,000. On May 3, 1922, Mrs. Hutchings became eighteen years of age. On July 18, 1922, but little more than two months after becoming eighteen years of age, Mrs. Hutchings commenced this action seeking the setting aside of the deed in question. Mrs. Hutchings has never received any portion of the proceeds of the attempted conveyance of Fanshier as executor, nor has she by word or act ever ratified that conveyance.

It is contended in behalf of Mrs. Hutchings that the power of sale vested in Fanshier as the executor by the terms of the will was only the power to sell for an entire cash consideration, and since $8,500 of the total $35,000 agreed value of the property and agreed consideration for the conveyance was paid by the transfer of real property by the oyster company, the deed was void as a conveyance of her interest in the property, or at least voidable at her election upon her becoming eighteen years of age. It seems to us that this view of the conveyance must be sustained. We have seen that the terms of the will gave to Fanshier, as executor, only the "power to sell all and any real estate when in his judgment necessary for the best interests of said estate." This was a single indivisible transaction in which there inhered in a large measure the element of exchange of real property of the estate for other real property. We do not fail to note that Fanshier, by the terms of the deed, also conveyed his individual interest in the property; that is, his interest consisting of what may be termed his "estate for years;" but

that we regard of no consequence in our present inquiry, because the deed does not upon its face purport, nor does the evidence show, or even suggest, any intent on the part of Fanshier or the oyster company, to apportion or apply the real property representing $8,500 of the consideration in part payment of the portion of the consideration for the conveyance of the interest of the estate in the property. Indeed, the only suggestion in the evidence of intent to apportion the consideration as between the interests of the estate and the individual interests of Fanshier is that the cancellation of the $6,000 owing by him to the oyster company should be considered as the consideration for the conveyance of his individual interest in the property. But even this seems to us, in view of the vague testimony upon that subject, little more than a suggestion in that behalf, falling far short of a showing of the meeting of the minds of Fanshier and the oyster company to that effect. It seems, therefore, plain to us that we must now regard this single indivisible transaction as one into which the element of exchange has so largely entered as to render it clearly not a sale of the estate's or Mrs. Hutchings' interest in the property for cash.

It is a well established rule of law that a mere power to sell, even though it be a discretionary power in the one vested with such power, gives authority to sell for cash only. *Woodward v. Jewell,* 140 U. S. 247, 253; 11 R. C. L. 400; 21 R. C. L. 780. Now this will does not make Fanshier a trustee in the sense of vesting the title to the property in him in trust for his daughter, Mrs. Hutchings. The will, in express terms, gives the property to her and vests the title to the property in her subject only to Fanshier's right to the rents and incomes therefrom until she shall have attained the age of eighteen years. Of course, all of the property became subject

to the payment of the debts of the testatrix, but manifestly a disposition of the property for that purpose could not be lawfully made by exchange for other property. We think there was, in no event, any authority given by the terms of the will to Fanshier as executor to sell and convey the property of the estate, other than his individual interest therein, for cash. No authority of reinvestment is either expressly or inferentially given by the terms of the will, as we read its language. We conclude that the fact that the consideration for the conveyance of the interest of the estate and Mrs. Hutchings was not wholly in money, but was in a large measure real property taken in exchange, the deed was at least voidable at the election of Mrs. Hutchings upon her arrival at the age of eighteen years.

Aside from the deed having been made conveying the interest of the estate and Mrs. Hutchings in a large measure in exchange for other property, viewed apart from its conveyance of Fanshier's individual interest, there are other considerations strongly suggesting the right of Mrs. Hutchings to have the deed set aside. The power of sale being, by the terms of the will, given to Fanshier as executor and not as trustee in the sense of having the title vested in him, suggests that the power was to be exercised only in the ordinary course of the administration of the estate, that is, for the purpose of paying debts and expenses of administration, which necessity for sale would not, save in exceptional cases, exist ten years after the death of the testator, thus strongly suggesting inquiry as to such necessity of sale on the part of a prospective grantee. The commingling of the cancellation of the $6,000 debt owing personally by Fanshier to the oyster company as a part of the consideration, with the other portions of the consideration, for the one deed of conveyance, strongly

suggests the probability of Fanshier in effect paying his personal debt with property of Mrs. Fanshier. However, it is unnecessary for us to pursue the interesting inquiries thus suggested to an ultimate conclusion.

We are of the opinion that Mrs. Hutchings is entitled to have this deed decreed void and as of no effect as against her, upon the ground that, having in a large measure been executed in consideration of an exchange of other property, its execution was in excess of the executory powers of Fanshier given to him by the language of the will. The judgment of dismissal entered by the superior court denying to Mr. Hutchings the relief prayed for is reversed, and the cause remanded to that court with directions to enter a judgment in her favor decreeing the deed in question to be null and void and of no effect as a conveyance of her interest in the property in question.

MAIN, C. J., and PEMBERTON, J., concur.

BRIDGES, J. (concurring)—I concur in the conclusion reached. While I will not say that it may not be based on the reasons given in the opinion, which are that the sale was unlawful because it was not for cash, I would much prefer that it be put on the ground of want of authority in the executor to sell except to pay the debts of the estate of the testatrix. The will provides that the estate shall be settled under our non-intervention statute and gives the executor "every power therein required, and specifically giving him power to sell all and any real estate when in his judgment necessary for the best interests of the estate." By the terms of the will, the title to the property in question was expressly vested in the appellant, subject only, of course, to the rights of creditors. It would be entirely inconsistent to so vest the title and at the same time

authorize the executor to sell the property at his pleasure. The evidence seems to conclusively show that it was not sold for the purpose of paying debts of the estate. The fact that the will authorizes a sale by the executor in the interest "of the estate" also excludes the idea that it may be sold for any other purpose, and since the only possible interest "the estate" could have in the property was to sell it that the debts might be paid, and since there were no debts, the executor had no power to sell.

TOLMAN, J. (concurring)—Since the will gives the executor or trustee no power to invest or re-invest, I concur in the conclusions reached by Judge Bridges.