[No. 27713.   Department Two.   April 25, 1940 ]

*In the Matter of the Guardianship of* Fred R. Brown, *a Minor.*[2]

[2]Reported in 101 P. (2d) 1003; 107 P. (2d) 1104.

216

*Allen, Froude & Hilen* and *Rummens & Griffin* (*P. J. Gallagher* and *George B. Guthrie,* of counsel), for appellant.

*Bonsted & Nichoson* and *Poe, Falknor, Emory & Howe,* for respondents.

GERAGHTY, J.—This is an appeal by Wilmon Tucker, as administrator with the will annexed of the estate of

Sarah E. Smith, deceased, from an order of the superior court of Yakima county denying appellant's motion for revision of a court commissioner's decree approving a guardian's final account and petition for distribution.

Sadie R. Brown, March 6, 1934, was appointed guardian of the person and estate of her son, Fred R. Brown, a minor eighteen years of age. The minor's estate, as inventoried, was appraised at $212,705. At the time of her appointment, the guardian's bond was fixed at $10,000 and later was increased to $110,000.

Appellant, as administrator, filed a claim with the guardian, alleging that Reese B. Brown, father of Fred R. Brown, had received large sums of money and securities in a fiduciary capacity from Sarah E. Smith, for which he had not accounted; that property and large sums of money belonging to her had been taken by Reese B. Brown in the name of his son, Fred R. Brown; and that all the money and property standing in the name of the son or his estate, whether inventoried or not, rightfully belonged to the estate of Sarah E. Smith. Appellant prayed, among other things, that an accounting be had, and that all of the property and money standing in the name of Fred R. Brown be decreed to belong to the estate of Sarah E. Smith and impressed with a trust in favor of the appellant as its administrator.

On the guardian's rejection of the appellant's claim, he instituted an action in the superior court of Yakima county against Sadie R. Brown, individually and as guardian of her son's estate, the Guaranty Trust Company, as administrator of the estate of Reese B. Brown, deceased, and Fred R. Brown, to recover, as property belonging to the Sarah E. Smith estate, all of the assets of the estates of Reese B. Brown and Fred R. Brown.

The defendants in that action pleaded that all of the property or money received by Reese B. Brown from

Sarah E. Smith had been given to him by her as an absolute gift.

March 26, 1938, the superior court of Yakima county decided the issues in that action adversely to the appellant's contention and entered an order of dismissal of the action. On appeal to this court, it was concluded that Mrs. Smith had turned over all of her property to Reese B. Brown in the course of a fiduciary relationship. The judgment was reversed, and the cause remanded for further proceedings not inconsistent with what was said in the opinion. *Tucker v. Brown,* 199 Wash. 320, 92 P. (2d) 221. That action will hereafter be referred to as the Tucker suit.

While the Tucker suit was pending in the court below, and on November 13, 1936, Fred R. Brown became of legal age; and, on December 17, 1936, the guardian filed her first and final account in his estate and petitioned for her discharge. In her account, she recited the pendency of the Tucker suit and the costs incurred in its defense and prayed for an allowance for her attorney's fees and expenses, as well as compensation for her own services as guardian.

The account and petition came on for hearing before a court commissioner. After denial of a motion made by the appellant that the hearing be postponed pending the determination of the Tucker suit, the commissioner heard the testimony of the guardian with reference to her services and of her attorneys in respect to the nature and value of their services. At the close of the hearing, the commissioner entered a decree approving the guardian's account and directing payment of the following sums: To the guardian, for her services in the administration of the trust, $15,000; to Bonsted and Nichoson, as full compensation for legal services, mainly in defending the interest of the ward's estate in the Tucker suit, $15,000; to Poe, Falknor, Falknor

and Emory, as the ward's share of the fee paid to that firm for services in the Tucker suit, $2,000; and to the Guaranty Trust Company, as administrator of the Reese Brown estate, $5,000, being the ward's proportionate share of the expense incurred in defending the Tucker suit. Finally, the guardian was directed to distribute to Fred R. Brown all of the residue of his estate,

" . . . . subject, however, to the pendency of the aforesaid action . . . wherein Wilmon Tucker, as administrator with the will annexed of the estate of Sarah E. Smith, deceased, is plaintiff, and Sadie R. Brown, Fred R. Brown, *et al.*, are defendants . . . and subject to all of the rights of plaintiff and all of the liabilities of the defendants, Sadie R. Brown, as guardian of the person and estate of Fred R. Brown, a minor, and of Fred R. Brown, individually, and his estate flowing from or arising out of said action; . . . "

The appellant, by motion, applied to the superior court for a revision of the commissioner's decree. After argument, the court made an order revising the decree in some respects not material here, but approving the allowances made to the guardian for her own fees, for attorney's fees, and the contribution to the expense incurred by the administrator of the Guaranty Trust Company, administrator of the Reese Brown estate, in defending against the Tucker suit. The order also approved the provision embodied in the commissioner's decree for immediate distribution of the residue of the guardianship estate to the ward.

On entry of the foregoing order, the appellant, in open court, gave notice of appeal. An appeal bond was timely filed, and a proposed statement of facts was served and filed May 13, 1937. Within the time allowed, the respondents served and filed their proposed amendments to the statement. Nothing further was done to settle the statement until after final disposition of the

Tucker suit on appeal. The opinion in that case was filed June 22, 1939, and, on July 6th thereafter, the appellant gave notice to the respondents of his application for settlement of the statement. The statement was settled and certified July 12th, and appellant's opening brief served July 26, 1939. Before certifying the statement, the court denied a motion interposed by the respondents to dismiss the application, for the reason that it had not been made within a reasonable time and that the appellant should be held to have abandoned his appeal.

The respondents now move in this court for dismissal of the appeal and affirmance of the judgment on the grounds urged below and the further ground that the appellant's brief was not timely filed.

By giving his notice of appeal, filing his bond, and serving and filing his proposed statement of facts, the appellant complied with the essential jurisdictional requirements. When the matter of the certification of the statement was before the trial court, appellant presented the affidavit of one of his counsel to the effect that there had been an "arrangement" between counsel for the parties for holding further steps on the appeal in abeyance until after the determination of the issues in the Tucker suit. That such an arrangement was made, was denied in an affidavit filed by respondents; and, in any event, it was not in writing as required by rule of court. It appears from written stipulations in the record that, after service of appellant's brief, respondents sought, and were given, two extensions of time for serving their answering brief.

Under the circumstances, the respondents were in no way prejudiced by the delay of the appellant in applying for settlement of the statement of facts. The trial court did not abuse its discretion in certifying the

statement. The motion in this court to strike and dismiss is without merit and should be denied.

The appellant's assigned errors are: (1) The allowance of attorneys' fees and expenses in contesting the Tucker claim and directing that they be paid out of property claimed by him; (2) the ordering that the property in the guardian's possession be delivered to the ward; and (3) the allowing of $15,000, or any portion thereof, as fees to the guardian.

Appellant takes the position throughout his brief that the effect of the decision in the suit of *Tucker v. Brown, supra,* was to declare all of the property in the guardianship estate of Fred R. Brown to be held in trust for appellant, and he thus states the question involved:

"We therefore have for consideration a rather simple question of whether or not a guardian, holding trust property as a successor trustee, can use the property in her possession, belonging to such trust estate, to pay her own fees and the fees and expenses of her attorneys incurred in an unsuccessful defense of a suit by the true owner to recover such property."

Actually, the status of the property in the guardianship estate, with respect to the appellant's claim, has not yet been determined. It may be trust property in whole or in part, or it may not be. The question, with respect to payment of expenses and fees, is, we think, whether the guardian is entitled (1) to payment of the reasonable expenses incurred by her in defending the ward's title against an adverse claim; and (2) to payment for her own services, even though it may ultimately be judicially determined that the property, in whole or in part, belongs to the Sarah E. Smith estate.

We will first consider the guardian's right to an allowance for the expenses and attorneys' fees incurred in defending the Tucker suit.

It is provided in Rem. Rev. Stat., § 1575 [P. C. § 9907]:

"It shall be the duty of the guardian of any estate:

. . .

"(5)   To pay all just debts due from such ward out of the estate in his hands, and to collect all debts and demands due such ward, and in case of doubtful debts, to compound the same, *and to appear for and defend, or cause to be defended, all suits against such ward.*" (Italics ours.)

By her appointment, the guardian became the conservator for her ward of a considerable estate, to which he had at least *prima facie* title, and for the faithful performance of her duties, she was required to give a bond in a large sum.   Now, when an adverse claim to the whole of this estate was asserted, what was her duty in the premises?   If we are to accept the appellant's contention, she was faced with the alternative of following one of two courses:   Either standing idly by and surrendering her ward's estate without a contest, or waging a contest involving great expense with the certainty that, if the appellant prevailed ultimately, she would have to bear these heavy charges herself.

We do not conceive that she was faced with this dilemma.   In the circumstances, Rem. Rev. Stat., § 1575, made it her duty to defend the ward's estate against the adverse claim, and, by the provisions of Rem. Rev. Stat., § 1586 [P. C. § 9918], she was assured that, in making this defense, she would be allowed her reasonable expenses and attorneys' fees.   As was said in *Ashley v. Holman,* 44 S. C. 145, 166, 21 S. E. 624, a case involving a similar issue, the cases are quite different when a trustee, of his own notion, commences an action concerning the estate of his *cestui que trust* without first obtaining an order of court sanctioning such action, and the case of a trustee who is sued by a third party.   In the latter instance,

". . . the principle of self-defence, of necessity, drives the trustee to court and to the expenditure of the funds of the *cestui que trust.* It is not a case of *may,* but *must."*

In the recent case of *In re Jolly's Estate,* 3 Wn. (2d) 615, 101 P. (2d) 995, in sustaining the right of the executor named in a will, which had been probated, to expenses incurred by him in unsuccessfully resisting the probate of a later will, we say:

"If the rule contended for by appellant be now adopted, then, in the future, an executor in the position in which McCarthy was when he was cited into court, must either default or show cause at his peril, or, having gone to the point to which McCarthy went and prevented the revocation of the will under which he was acting by securing a jury verdict and a judgment sustaining it, in case an appeal should be taken from that judgment, would be compelled to let the appeal go by default or run the chance of never being reimbursed for his own outlays and expenses, to say nothing of having his adversary's costs charged against him if the appellate court should reverse the trial court. Since duty and the law require an executor to defend in such a situation, he should not be required to defend at his peril."

The general rule deducible from the authorities is stated in 3 Woerner's American Law of Administration (3d ed.), 1783, § 517, as follows:

"It may be stated, as a general rule of law, and one always applied in equity, unless restrained by some statutory provision, that an administrator or executor, having acted in good faith and with ordinary prudence, is entitled to be credited in his administration account for all costs he may have been compelled to pay in litigation affecting the estate in his charge. And his right to credit therefor does not depend upon the favorable issue of the litigation, but only upon good faith in prosecuting or defending. *A favorable issue in the first instance, however, is decisive that the proceeding was not groundless."* (Italics ours.)

Ordinarily, the question whether a personal representative or guardian may pay expenses incurred in litigation affecting an estate, arises where there are assets in the estate, other than the property involved in the litigation, available for payment of the charges. But in resolving the issue before us here, we must consider the possibility that the whole of the Fred Brown estate may be determined to belong to the estate of Sarah E. Smith. If, on a final determination of the issues in the Tucker suit, property enough remains in the estate of Fred Brown to satisfy any claim found to be due the Sarah E. Smith estate, after payment of the fees and expenses of the guardianship estate, then, of course, the question involved here would be moot. It would seem, however, that the rule authorizing the making of an allowance to a personal representative or guardian for expenses incurred in resisting adverse claims against the estate should apply with equal force whether the claim be against a part or the whole of the estate, assuming, of course, as the rule requires, that the claim was resisted in good faith and upon reasonable grounds. Here, the good faith of the guardian, as well as her duty in the premises, is evidenced *prima facie* by the outcome of the Tucker litigation in the superior court.

In *In re Carlin's Estate,* 226 Mo. App. 622, 47 S. W. (2d) 213, after the administration of an estate had so far progressed that it was ready for final settlement and distribution, an action was instituted against the administratrix by one DeArmond, claiming to be the adopted son and sole heir at law of the deceased and entitled to all of the property of the estate. The administratrix contested the claim. The lower court found that DeArmond was, in fact, the adopted son of the deceased and was entitled to the whole of the estate remaining for distribution after final settlement

and payment of lawful claims and costs of administration. The judgment was affirmed on appeal.

The probate court refused to allow the administratrix payment of the expenses incurred in the employment of counsel in the litigation and for other services rendered to the estate. The appellate court, in reversing the decision of the trial court, said:

"But the learned trial court erred in its judgment in denying credit to the administratrix for attorney fees and expenses incident to the litigation instituted by DeArmond. The claim involved in the suit was that of sole owner of the entire estate, both real and personal. The administratrix as such was made a party, summons was served upon her, and she was in duty bound to defend, and it appears that she was in fact the only party who did defend. She was possessed of a personal estate which had descended to her as administratrix and which she held as trustee for the legal owner; she was a necessary party to the suit. [*Eisiminger v. Stanton,* 129 Mo. App. 1, c. 412.] She had no personal interest in the estate and claimed none as an individual. It was to the benefit and to the interest of the estate that the true ownership thereof be determined. Under the circumstances revealed by the record the administratrix clearly would have been derelict in her duty if she had not defended against the claim of an apparent stranger, so far as she knew, who based his claim to the entire estate upon an oral agreement made by the deceased. . . . She should not be required to defend at her own personal expense. There is no evidence, nor a suggestion of evidence, of bad faith upon her part or of her attorneys, and when an administrator in good faith and in the exercise of ordinary prudence employs legal counsel to defend such an action, and the attorneys in good faith and with reasonable care, skill, and judgment perform such duty, then in law the whole matter is for the benefit of the estate. Good faith and reasonable care and not the result of the litigation is the test."

In the case of *Shouldice v. McLoed's Estate,* 145 Mich. 708, 108 N. W. 1083, the facts were that one Shouldice filed a claim in a decedent's estate, which the executors contested. The trial resulted in final judgment against the executors, in the sum of six thousand dollars. The executors' account included charges incurred for attorneys' fees and other expenses in contesting the claim. The property of the estate was insufficient to pay the claim, and it was contended by Shouldice that, under such circumstances, the executors should be held to have undertaken the defense at their own peril and should be required to look to the legatees for reimbursement.

In approving the allowance to the executors for the expenses incurred, the Michigan supreme court said:

"We cannot discover that the rule that the executor is entitled to be repaid the reasonable expenses of administration . . . is subject to any such qualification. On the other hand, we understand the rule to be that an executor is entitled to defend against a claim presented against his testator, provided he acts in good' faith, upon the advice of counsel, and may be reimbursed his expenditures."

The numerous cases cited by appellant in support of his contention may be divided into three groups: The cases in the first group are those involving the principle that one who, by adversary proceedings, attempts unsuccessfully to invalidate a trust cannot be reimbursed for his expenses out of the trust funds. These cases are not in point here, because they presuppose the existence of a trust fund and an attempt to defeat it. That the guardianship funds are, in fact, trust funds belonging to appellant, has not been established; the appellant is attempting to defeat the guardianship estate by establishing a trust.

The rule applying here is illustrated by the case of

*Hobbs v. McLean,* 117 U. S. 567, 582, 29 L. Ed. 940, 6 S. Ct. 870, where the court declared the principle that,

". . . where one brings adversary proceedings to take the possession of trust property from those entitled to it, in order that he may distribute it to those who claim adversely, and fails in his purpose, it has never been held, in any case brought to our notice, that such person had any right to demand reimbursement of his expenses out of the trust fund, or contribution from those whose property he sought to misappropriate."

Another illustrative case of those cited is *Strout v. Strout,* 117 Me. 357, 104 Atl. 577. The plaintiff contested a will, claiming that a residuary clause naming his children as beneficiaries was void and contrary to the rule against perpetuities. In holding that the plaintiff was not entitled to his costs and counsel fees out of the trust fund, the court said:

"This litigation instituted by the plaintiff, is of a highly adversary character; it has for its object to wrest the trust estate from the possession of the trustee, to deprive the children of the plaintiff of all benefit of the fund, and to divert the fund to the personal benefit of the plaintiff. In such a case the defeated party must bear the expense which he has incurred in his own interest alone. The trust estate is chargeable only with that expense which is incurred in the interest of all the cestuis que trustent."

The next group of cases cited by appellant support the view that a personal representative is not entitled to his expenses where he unsuccessfully had defended suits brought by other parties claiming the estate and where he is himself the beneficiary. The cited case of *In re Thompson's Estate,* 156 Wash. 486, 287 Pac. 21, is illustrative of this group. In that case, the executrix was the beneficiary named in the will. One Brown filed a claim, asserting a right to all of the property in

the estate by virtue of a contract with the deceased. In unsuccessfully defending his claim, the executrix incurred expenses which she included in her final account. In stating the question, this court said:

"The question is whether, in the litigation referred to, Mrs. Jones, the executrix, was representing herself, as beneficiary under the will, or the estate of the deceased. If she was representing herself as beneficiary, the order of the trial court in disallowing the items was correct. On the other hand, if she was representing the estate, the judgment cannot be sustained."

The court concluded that the executrix was representing herself and affirmed the judgment of the lower court, which had disallowed the expenses of the litigation.

The third class of cases cited are those which support the rule that a receiver holds the property of the receivership subject to the liens and priorities existing at the time of his appointment, and are not of any controlling force here.

The reasonableness of the allowance for attorneys' fees and the other expenses involved in defending against the Tucker suit and in the guardianship is not questioned, the sole contention of the appellant being that no part of these expenses should be paid out of the guardianship estate. Our conclusion is that the trial court did not err in allowing these expenses.

We now come to a consideration of the propriety of the court's allowance of fees to the guardian for services rendered in the administration of her trust.

The ward's estate included valuable securities, farm lands, and other improved real estate, requiring detailed and careful management. So far as the record discloses, the estate was well managed. The guardian would be, manifestly, entitled to reasonable compensation for her services independently of the ultimate dis-

position of the property. If she had not performed the services, the appointment by the court of some other person would have been necessary. Indeed, the appellant himself moved the court for appointment of a co-guardian.

But, while we think the guardian should be compensated for her services, we are of the opinion that the sum awarded by the court commissioner and approved by the court was too large under the circumstances.

It appears from the record that the ward, after coming of age, entered into a written agreement with his mother for payment of a fee of fifteen thousand dollars. This agreement seems to have been given weight by the court in fixing the amount of the fee. While the ward might have been bound by the agreement, although such agreements are closely scrutinized by the courts, it could not have any controlling influence as against the interest of the appellant.

Considering all of the circumstances of the case as disclosed by the record, we are of the opinion that an allowance of five thousand dollars to the guardian would be reasonable and adequate compensation for the services rendered by her.

We have not overlooked the appellant's contention that, since the guardian's report was made some eight months after the two-year period prescribed by Rem. Rev. Stat., § 1575 [P. C. § 9907], subd. (3), fees should not have been allowed to her. The allowance of fees under this section is a matter largely in the discretion of the court. *In re Deming,* 192 Wash. 190, 73 P. (2d) 764; *In re Kelley,* 193 Wash. 109, 74 P. (2d) 904.

The appellant objects to the provision in the decree distributing the residue of the estate to the minor, and contends that the Tucker suit operated under the theory of equitable levy to vest jurisdiction in the superior court of Yakima county, in respect to

the properties upon which Tucker was seeking to impress a trust. The court distributed the estate to Fred R. Brown, subject to all of the rights of the plaintiff in the Tucker suit and all of the liabilities of Sadie R. Brown, as his guardian, and Fred R. Brown, both of whom are parties defendant therein.

In *Meeker v. Mettler*, 50 Wash. 473, 97 Pac. 507, in disposing of the contention that an order discharging a guardian showed lack of jurisdiction, because of a failure to recite that the guardian had been served with notice of the hearing, or of the appointment of a guardian *ad litem*, the court said:

"The fact that a guardian was regularly appointed over the person and estate of the minor in the year 1895, which is admitted, necessarily gave the court general jurisdiction over the person of the minor and of his estate. This jurisdiction continued until the minor attained his majority, at which time the right to manage the estate and the person of the said minor by the court or the guardian ceased. Bal. Code, § 6401 (P. C. § 2735). If the ward had arrived at the age of majority when the final account of the guardian was filed, no guardian *ad litem* was necessary or proper. His personal appearance was sufficient to give the court jurisdiction, if personal jurisdiction were necessary."

With respect to the termination of the guardian's authority, the following rule is stated in 28 C. J. 1096, § 110:

"Where a guardian is appointed because of the infancy of the ward, the guardianship terminates when the ward attains his majority. But the guardian remains subject to the duty, if it has not been already performed, of making a final accounting and settlement with his ward, and also remains liable on any personal obligations which he has assumed in connection with the guardianship."

The following authorities support the above rule and may be cited:

12 R. C. L. 1117; 4 Bancroft's Probate Practice (1928 ed.), 2241, § 1388; *State ex rel. Scott v. Greer,* 101 Mo. App. 669, 74 S. W. 881; *Rullman v. Rullman,* 81 Kan. 521, 106 Pac. 52; *Miller v. Tidal Oil Co.,* 130 Okla. 133, 265 Pac. 648; *Pure Oil Co. v. Clark,* 37 S. W. (2d) (Tex. Civ. App.) 1088; *Georgia Railroad Bank & Trust Co. v. Liberty Nat. Bank & Trust Co.,* 180 Ga. 4, 177 S. E. 803.

The cause is remanded to the superior court with direction to modify the decree in accordance with the views expressed in this opinion. As so modified, the decree shall be deemed affirmed.

BLAKE, C. J., BEALS, STEINERT, and JEFFERS, JJ., concur.

ON MOTION TO DISMISS APPEAL AND WITHDRAW DEPARTMENTAL OPINION.

[*En Banc.* November 19, 1940.]

BEALS, J.—On appeal from an order of the superior court for Yakima county approving the final account of the guardian of a minor, by an opinion of a Department of this court, the order was affirmed, as modified. The opinion of this court directed that certain allowances be made by way of compensation to the guardian for services and for compensation to the guardian's attorneys.

A petition for a rehearing of the matter *En Banc* was seasonably filed by the appellant, and thereafter this court directed counsel for respondents to answer the petition. While the matter was thus pending before this court, all controversies involved in the appeal were fully settled by the joint acts of all the parties concerned; and this fact having been called to the attention of this court, appellant has moved that the order

232

directing respondents' counsel to answer appellant's petition for rehearing be vacated, and that an order dismissing the appeal be entered. Appellant also asks that the opinion of the court affirming the order, as modified, be withdrawn, and as an alternative, moves that consideration of the petition for rehearing be deferred until the hearing of a companion case, which has not yet been determined by this court. Respondents agree that they should be relieved from the burden of answering appellant's petition for rehearing, but contend that appellant's motion for the withdrawal of the opinion filed should be denied.

By the actions of the parties in voluntarily compromising and settling their disputes, this litigation has been terminated. No further rights or claims of any of the parties remain to be adjudicated, and as to them all questions involved have become moot.

■ By Rem. Rev. Stat., § 10 [P. C. § 7338g], it is provided that such a decision of a Department of this court as was rendered in the case at bar

" . . . shall not become final until thirty days after the filing thereof, during which period a petition for rehearing, or for a hearing en banc, may be filed, the filing of either of which, except as hereinafter otherwise provided, shall have the effect of suspending such decision until the same shall have been disposed of. If no such petition be filed the decision of a department shall become final thirty days from the date of its filing, unless during such thirty-day period an order for a hearing en banc shall have been made . . . The effect of granting a petition for a rehearing, or of ordering a cause once decided by department to be heard en banc, shall be to vacate and set aside the decision. Whenever a decision shall become final, as herein provided, a judgment shall issue thereon."

In this statute, the word decision is evidently used as synonymous with opinion.

The question here presented concerns the procedure

to be followed in the rather unusual situation above narrated.

In the case of *Dishman v. Whitney*, 121 Wash. 157, 209 Pac. 12, 29 A. L. R. 460, a Departmental opinion was filed, affirming the judgment appealed from, which had been rendered in favor of the plaintiff. After the filing of the opinion, a petition for rehearing *En Banc* was filed and granted, but before the day fixed for the rehearing, the parties entered into a stipulation reciting that the judgment had been fully settled and satisfied, and that the appeal might be dismissed without costs. Thereafter, by a *per curiam* opinion (124 Wash. 697, 215 Pac. 71), this court called attention to a slightly inaccurate statement in the Departmental opinion, the *per curiam* opinion concluding with the following sentence:

"By filing this brief memorandum it is not the intention either to approve or disapprove the Department opinion, except in so far as that opinion was not accurate in its discussion of the case mentioned."

Later, the appeal was, by order of this court, dismissed.

In the case of *Nettleship v. Shipman*, 161 Wash. 292, 296 Pac. 1056, referring to the opinion of this court in the *Dishman* case, appears the following:

"After the filing of the decision, a rehearing was granted, and, pending reargument of the case, the litigation was terminated by stipulation of the parties. In an *En Banc* opinion by the court (124 Wash. 697, 215 Pac. 719), attention was called to the fact that the reference to the holding of the court in the case of *Buckley v. Harkens* [114 Wash. 468, 195 Pac. 250], *supra*, was not, in all respects, accurate, but, as the action had terminated, the Departmental opinion was neither approved or disapproved, and the same still stands in that rather anomalous situation, as the opinion, not of the court, but of the judges who signed the same."

In the case of *Mitchell v. Maytag-Pacific-Intermountain Co.,* 184 Wash. 342, 51 P. (2d) 393, the *Dishman* case was again referred to as follows:

"Appellant next cites the opinion filed in the case of *Dishman v. Whitney,* 121 Wash. 157, 209 Pac. 12, 29 A. L. R. 460. This opinion, as published, never became a decision of this court, and, for reasons stated by the court in the case of *Nettleship v. Shipman,* 161 Wash. 292, 296 Pac. 1056, the opinion is not authority. The reasoning of the opinion, based upon the facts as stated, may, of course, be used as a basis for argument, but the opinion, not constituting a decision of this court, is not authoritative."

In the case of *Bourus v. Hagen,* 192 Wash. 588, 74 P. (2d) 205, we referred to the case in the following language:

"Appellant also stresses the case of *Dishman v. Whitney,* 121 Wash. 157, 209 Pac. 12, 29 A. L. R. 460. By reference to *Dishman v. Whitney,* 124 Wash. 697, 215 Pac. 71, it will be found that the force of that case as authority is lost through the fact that a petition for rehearing was granted and the case was settled without being heard *En Banc.*"

In the case of *Hutchings v. Fanshier,* 132 Wash. 5, 231 Pac. 14, a Departmental opinion was filed, reversing, on plaintiff's appeal, the judgment of the superior court in favor of defendants. After the filing of the Departmental opinion, a petition for rehearing was filed and by the court granted, but prior to the date fixed for the rehearing, the parties filed in this court a stipulation reciting a settlement of the litigation, and agreeing that the appeal be dismissed, and that this court remit the cause to the superior court, with directions to dismiss the action with prejudice and without costs. By a *per curiam* opinion (134 Wash. 704, 236 Pac. 119), this court, after reciting the facts above stated, in accordance with the terms of the stipulation,

dismissed the appeal, with directions to the trial court to dismiss the action, as provided in the stipulation of the parties.

In the *Hutchings* and *Dishman* cases, petitions for rehearing having been granted, the Departmental opinions were "vacated," as provided by the statute above quoted. In the case at bar, the opinion was suspended by the filing of the petition for a rehearing. In neither instance did the opinion ever become final; the moment for the entry of a judgment by this court never arrived. In so far as the questions here presented are concerned, whether an opinion be vacated or suspended, the result is the same.

In the case at bar, the petition for rehearing was not granted, nor have respondents filed their answer thereto. In 7 Cal. Jur. 647, title "Courts," § 49, is found the following:

"There is a wide difference between 'decisions' and 'opinions.' The decision of a court is its judgment; the opinion is only the reasons given for that judgment . . . The judgment or decision is entered of record, and can be changed only through a regular application to the court, upon a petition for a rehearing or a modification. The opinion, on the other hand, is the property of the judges, and subject to their revision, correction and modification in any particular deemed advisable until, with the approbation of the writer, it is transcribed in the records, after which it ceases to be the subject of change. It then becomes like a judgment record, and is beyond the interference of the judges, except through regular proceedings before the court by petition."

Our statute does not observe the distinction between opinion and decision noted in the above text, but does differentiate between a decision of this court and a judgment thereof. The above text correctly states the difference between the words.

In 9 Bancroft's Code Practice and Remedies 9565, § 7253, is found the following:

"Under the rules of some of the courts, the filing of a petition for rehearing within the prescribed time suspends proceedings under the decision until the petition is disposed of, unless the court otherwise orders. Where no contrary order is made, the effect of the pending petition is to prevent the judgment from becoming final until disposed of, and to leave the court in control of the cause within the limits of its appellate jurisdiction. The rules of other courts provide that the remittitur shall be stayed until the expiration of the time for the filing of petitions for rehearing, or until the petition therefor shall be denied, unless the court shall otherwise provide. It has been held that the opinion of the court is final when it is handed down, and that a motion for rehearing, if filed, only suspends the judgment from the date of filing."

In Bancroft, the word *decision* is used as in our statute.

This court has repeatedly dismissed appeals when it has transpired that the controversy between the parties has ceased. In the case of *Pacific Savings & Loan Ass'n v. Smith,* 121 Wash. 595, 209 Pac. 1086, 212 Pac. 582, it is said:

"We have always held that we will not decide a case where the controversy between the contending parties has ceased, and when there would be nothing on which our judgment could operate. *Hice v. Orr,* 16 Wash. 163, 47 Pac. 424; *State ex rel. Taylor v. Cummings,* 27 Wash. 316, 67 Pac. 565; *Buchser v. Buchser,* 72 Wash. 675, 131 Pac. 193, 132 Pac. 239; *Holly-Mason Hdw. Co. v. Schnatterly,* 111 Wash. 29, 189 Pac. 545.

"The appeal is dismissed and neither party will recover any costs in this court."

In the later case of *State ex rel. Burnham v. Superior Court,* 180 Wash. 519, 41 P. (2d) 155, we said:

"It being clear on the facts and the face of the petition in this case that there is nothing upon which

the judgment of the court could operate, and that the question is moot, the appeal must be, and is, dismissed."

In each of the two cases cited, other decisions of this court were referred to as supporting the action taken. Apparently, the court based its conclusion upon the fact that there was nothing on which any judgment of this court could operate.

■ An opinion filed by this court, either of a Department thereof or of the court sitting *En Banc,* is not a judgment of this court, unless in a limited class, as provided by Rem. Rev. Stat., § 11 [P. C. § 7338h]. It is the then opinion of the court upon the facts and law stated therein. No judgment is entered until the opinion becomes final. The statute above quoted directs that if no petition for rehearing be filed, a Departmental decision shall become final thirty days from the date of its filing, unless this court, on its own motion, reassigns the case for hearing *En Banc.* If a petition for rehearing be filed, the decision is suspended until the petition for rehearing is disposed of. The filing of an opinion of this court is merely one step in the orderly process of the court leading up to the court's judgment. The opinion or decision may or may not result in a judgment of this court in accordance therewith. The cause is still pending at large before this court until the entry of a judgment, and a judgment other than that provided for in the Departmental opinion as filed may well be, and often has been, entered.

■ ■ If on appeal by one convicted of crime and sentenced to confinement in the penitentiary, an opinion affirming the judgment be filed, and if thereafter it should be suggested to this court that the person sentenced had died after the filing of the opinion, but prior to the going down of the remittitur, the appeal would be dismissed by an order reciting

the facts, as this court would not make the vain and useless gesture of entering a final judgment affirming the conviction of a dead man, and send down a remittitur thereon.

In 4 C. J. S. 1953, § 1354, is found the following text:

"When it appears that there has been a valid settlement or adjustment by the parties of all their rights and differences respecting the subject matter of the controversy, the appeal will be dismissed, even after the cause has been argued and submitted, or a decision has been rendered by the reviewing court but the case is still pending on a motion for rehearing, or after a hearing has been ordered . . ."

In support of his contention that the appeal herein should be dismissed and the Departmental opinion withdrawn, appellant cites several authorities. Other courts, while discussing appeals under such circumstances, have not withdrawn opinions which had been filed. We are not disposed to withdraw the Departmental opinion which was filed herein. The filing of an opinion constitutes a step in the orderly procedure of this court, leading up to final disposition of the cause. The record as made should stand as this court's action in the course of the accomplishment of its judicial functions.

While it is true that this court is not required to dismiss an appeal simply because the questions presented have become moot, for many years it has been the general practice of this court to refuse to concern itself with litigation in which the controversy upon which the same was based has ceased to exist.

The motion to withdraw the Departmental opinion herein is denied. The appeal is dismissed, for the reason that all controversies presented by the appeal and between the parties thereto have ceased, and nothing remains upon which a judgment of this court can operate. Respondents, of course, will not answer appel-

lant's petition for a rehearing. This opinion will be published in the bound volumes of our reports, immediately following the Departmental opinion heretofore filed herein. No costs will be recovered in this court by either party.

MAIN and JEFFERS, JJ., concur.

STEINERT, J. (concurring)—To avoid any possible confusion or misunderstanding in the future, I think that the majority opinion herein should specifically state that, because of the circumstances here shown, the Departmental opinion herein, *ante* p. 215, is no longer *authoritative*. See *Nettleship v. Shipman,* 161 Wash. 292, 298, 296 Pac. 1056, 1059; *Mitchell v. Maytag-Pacific-Intermountain Co.,* 184 Wash. 342, 350, 51 P. (2d) 393, 396.

ROBINSON and DRIVER, JJ., concur with STEINERT, J.

MILLARD, J. (dissenting) — The majority opinion writes into the statute a provision which imposes upon this court the duty of writing advisory opinions. Even the declaratory judgments act (Rem. Rev. Stat. (Sup.), § 784-1 [P. C. § 8108-21] *et seq.*) does not bring within its purview the supreme court of this state.

My research has not disclosed any authority at the common law in support of the expunging of the Departmental opinion and/or the dismissal of the appeal. This court has never adopted a rule, nor has our legislature enacted any statute, which authorizes dismissal of an appeal or expunging of a Departmental opinion under a state of facts such as is presented in the case at bar. The *only authority* supporting the majority opinion is *McKenzie v. Chastain,* 181 Ga. 807, 184 S. E. 276, in which no opinion was written and which has never been cited with approval by any court. The syllabus recites that three cases were considered to-

gether. After a decision was rendered, but while the cases were still pending on motion for rehearing, the parties entered into an agreement settling all of them. "The cases having thus become moot while pending in this court, it is ordered that the former judgments be vacated, that the opinion be withdrawn, and that the writs of error be dismissed."

*Hutchings v. Fanshier,* 134 Wash. 704, 236 Pac. 119, *Dishman v. Whitney,* 124 Wash. 697, 215 Pac. 71, and *Young v. Campbell,* 20 Ariz. 355, 181 Pac. 171, are distinguishable on the facts from the case at bar. In each of those cases, a petition for rehearing was filed and by the court granted, but prior to the rehearing the parties reached a settlement and agreed that the appeal be dismissed. The holding, in effect, in each of those cases is that a motion for rehearing not only suspends but vacates and annuls the decision or opinion to which the petition for rehearing is addressed. In the case at bar, the petition for rehearing was abandoned; no rehearing had been granted.

In any event, the motion to dismiss the appeal is not timely. Nor does dismissal of the appeal afford the remedy sought by the parties, who are insistent that the opinion is unsound in law. Even if we dismissed the appeal, the judgment of the trial court would become final and constitute an adjudication of the issues involved herein binding on the respective parties. If the opinion remains in the published reports, the very thing which the parties desire done will have been refused.

The Departmental opinion affirming, as modified, an order approving the final account of the guardian, was filed April 25, 1940. Appellant's petition for rehearing was filed May 24, 1940. We ordered respondents, June 12, 1940, to answer appellant's petition for rehearing. June 17, 1940, the chief justice was advised

by respondents' counsel that the questions "raised upon the above appeal have, since the filing of the Departmental opinion on April 25, 1940, become moot." Appellant's counsel, in letter dated June 17, 1940, addressed to the chief justice, stated that, as the issues between appellant and all of the respondents "in the above appeal, No. 27713," had become moot, appellant had no objection to granting the request of respondents that they be not required to answer appellant's petition for a rehearing, provided that the opinion filed April 25, 1940, in the cause be not published in the bound volumes; "but if not withdrawn, then our petition for rehearing should be granted or the respondents be required to answer our petition."

The chief justice advised counsel for the respective parties that the question raised by them should be presented by appropriate motion, which was done, for hearing on a regular motion docket. Appellant's motion was for withdrawal of Departmental opinion, while respondents moved that they be relieved from the necessity of answering the petition for rehearing. Respondents urged that, as appellant voluntarily entered into the settlement agreement with respondents in June, 1940, which was subsequent to the filing of the Departmental opinion and prior to the direction of this court that the petition for rehearing be answered, under which every question presented to this court on appeal had become moot, appellant was estopped "to ask that the Departmental opinion be withdrawn . . . that the entry into said agreement implied an acquiescence by appellant to the Departmental opinion." In other words, *the petition for rehearing,* filed by appellant, *became moot.*

The Departmental opinion could not become final until thirty days after the opinion was filed, during

which period a petition for rehearing could be filed, the filing of which

" . . . shall have the effect of suspending such decision until the same shall have been disposed of. If no such petition be filed the decision of a Department shall become final thirty days from the date of its filing,"

unless the court on its own motion during such thirty-day period enters an order for an *En Banc* hearing of the cause. If of the view that the Departmental decision or opinion should become effective prior to thirty days after its filing, it shall go into effect, and *judgment issue* thereon, any time after its filing and prior to such thirty-day period, if the chief justice or a majority of the Department rendering any decision and any two associate judges who took no part in rendering such decision are of the view that the effective date of the opinion or decision should be any time prior to thirty days subsequent to filing of the decision. Whenever a decision or opinion shall become final, "a judgment shall issue thereon." Rem. Rev. Stat., § 10.

The majority mistakenly cite as supporting authority 9 Bancroft's Code Practice and Remedies 9565, § 7253. The opinions of the Oregon supreme court cited in the notes to that text disclose that the rules of the supreme court of Oregon in effect at the time of the writing of those opinions are very similar to our statute (Rem. Rev. Stat., § 10). The supreme court rules of Oregon provide:

"All applications for rehearing shall be by petition in writing or printing, . . . and shall be filed within twenty days next after the filing of the opinion. . . .

"The filing of a petition for a rehearing shall suspend further proceedings under the decision until the petition is disposed of, unless the court . . . shall otherwise order." 91 Pac. xi.

While the decision or opinion of the supreme court of Oregon is final at the time it is filed, a period of twenty days is allowed the parties (the period in this state is thirty days) in which to file a petition for a rehearing. The petition, under the rules of the Oregon supreme court, suspends further proceedings under the opinion or decision until disposition of the petition.

Under our statute (Rem. Rev. Stat., § 10), quoted above, our opinion or decision does not become final until thirty days after it is filed during which period a petition for rehearing may be filed. The filing of that petition has the effect of suspending the decision or opinion until this court has disposed of the petition for rehearing. If no petition is filed, the decision or opinion of a Department of this court becomes final thirty days from the date of its filing. Upon the disposition of the petition for rehearing, or if no petition for rehearing is filed within thirty days, the decision or opinion becomes final and "a judgment shall issue thereon." That is, the clerk of this court, as a matter of course, sends down a remittitur or transmits the mandate of this court to the clerk of the court affected.

Note the following language of Rule 24 of the supreme court of Oregon respecting the issuance of a mandate upon the disposition of a petition for rehearing, or if within the period with which a petition may be but has not been filed:

"Upon the disposition of a petition for rehearing or if within twenty days after final judgment or decree no petition shall have been filed, the clerk shall, as a matter of course, unless he is directed by the court otherwise, issue and forward a mandate to the clerk below." 91 Pac. xi.

In other words, while the opinion is *final,* the remittitur or mandate is stayed until the expiration of the time in which a petition for rehearing may be filed

or until the disposition of the petition for rehearing; or, as stated above, unless the court shall otherwise provide. Whether the opinion is called a decision or a judgment and is "final," means no more than our statute. On the one hand, the opinion of the court is *final* when it is filed, but a period of twenty days is permitted in which to file a petition for rehearing; the filing of the petition for rehearing suspends the opinion, the decision, or the judgment until disposition of the petition. The opinion, decision, or judgment *again becomes final*, and the clerk, as a matter of course, sends down the remittitur or the mandate of the supreme court to the trial court affected.

Respecting the question as to the date when the judgment of the appellate court becomes final under such a rule, the supreme court of Oklahoma held, in *St. Louis & S. F. R. Co. v. Bly*, 62 Okla. 93, 162 Pac. 202, that a judgment of that court affirming the judgment of the trial court when no petition for rehearing is granted becomes a finality on the day the judgment or opinion of the supreme court is filed. 2 R. C. L. 173 is cited in support of the position that the opinion did not become final on the day application for rehearing was denied but became final on the day the opinion, decision, or judgment was filed. That is, the petition for rehearing suspends the decision until disposition of the petition; and "when the petition for rehearing is denied the judgment became final on the day of its rendition by this court."

The rules of the supreme courts of Wyoming (104 Pac. xiv), Colorado (211 Pac. xi), and Utah (196 Pac. xiii), are to the effect that the filing of a petition for rehearing, within the prescribed time, suspends proceedings under the decision or opinion until disposition of the petition unless the court otherwise orders. In the notes under 9 Bancroft's Code Practice and

Remedies, 9566, § 7253 (cited in majority opinion), reading as follows, two Oregon cases are cited:

"It has been held that the opinion of the court is final when it is handed down, and that a motion for rehearing, if filed, only suspends the judgment from the date of filing."

The words "decision," "opinion," and "judgment" are used synonymously by the supreme court of Oregon, the decisions of which are cited in support of the text upon which the majority rely. The Oregon supreme court does not differentiate between a decision and a judgment. *Zeuske v. Zeuske,* 55 Ore. 65, 103 Pac. 648, 105 Pac. 249, Ann. Cas. 1912A, 557, is one of the two cases cited in support of the text just quoted. That case cites the rules of the supreme court of Oregon respecting the finality of its judgment on the date the opinion is filed, and that a motion for a rehearing suspends the judgment or opinion from the date of its filing; and that there must be a lapse of twenty days in every case between the rendition of the judgment and the issuance of the mandate unless the court otherwise directs.

This, in principle, is the same as our statute (Rem. Rev. Stat., § 10) to the effect that thirty days must elapse in every case between the date of the filing of the opinion and the issuance of the mandate unless the court otherwise directs. In the supreme court of Oregon, the remittitur goes down, as a matter of course, twenty days after the opinion is filed or after disposition of a petition for rehearing if filed within twenty days after the opinion is filed, which opinion is the judgment and is final. In Oregon, the opinion is the judgment. In this state, our opinion is the judgment or decision of this court thirty days after it is filed unless within that period a petition for rehearing is filed. Upon the disposition of that petition, our opinion

is final. As a matter of course, the clerk of this court issues and forwards a mandate or remittitur to the trial court exactly the same as is done in Oregon, the only difference being the number of days which must expire before the mandate issues.

The second case cited in the notes to the text upon which the majority rely is *Hammer v. Downing,* 39 Ore. 504, 64 Pac. 651, 65 Pac. 17, 990, 67 Pac. 30. In that case, it was held that, when an opinion is handed down, the judgment is, to all intents and purposes, final, notwithstanding the rules of the Oregon supreme court which allow the defeated party twenty days in which to file a petition for a rehearing; which rules, it should be remembered, provide that filing of a petition for rehearing within the period of twenty days suspends proceedings under such opinion, decision, or judgment.

The holding in *Hammer v. Downing, supra,* that petition for rehearing must be filed the day the opinion is filed or the judgment is pronounced, is not in harmony with the rules of the Oregon supreme court or the later opinion of *Zeuske v. Zeuske, supra.* Even if the opinion, decision, or judgment is *final* when filed or rendered, the rules of the Oregon supreme court give to the defeated party twenty days within which to file a petition for a rehearing. The filing of such petition suspends further proceedings under the decision. The mandate or remittitur is not transmitted to the clerk of the trial court until disposition of the petition for rehearing or until after the expiration of the period of twenty days after the filing of the opinion, decision, or final judgment of the Oregon supreme court.

The rules of other courts, as stated in 9 Bancroft's Code Practice and Remedies 9566, provide plainly that the remittitur shall be stayed until the expiration of the time of the filing of the petition or until the petition

therefor shall have been denied, unless the court otherwise provides. The effect of the petition for rehearing is to prevent the judgment from becoming final until disposition of the petition and (as held in *North Laramie Land Co. v. Hoffman,* 27 Wyo. 271, 195 Pac. 988) to leave the court in control of the cause within the limits of its appellate jurisdiction. In other words the opinion, decision, or judgment being final, it was essential, under *Hammer v. Downing, supra,* to the retention of jurisdiction by the appellate court that the petition for rehearing be filed on the same date that the opinion was filed, which is not in harmony with the twenty-day rule or *Zeuske v. Zeuske, supra.*

The filing of the petition for rehearing, under the statute (Rem. Rev. Stat., § 10), has "the effect of suspending such decision until the same shall have been disposed of." The meaning of this is so patent as to obviate the necessity of lexicographic or legal definition. The filing of a petition for rehearing postpones, until disposition of that petition, the effect of that opinion, which becomes a final decision or judgment within thirty days after filing, or final following disposition of the petition. The petition may aptly be designated a suspensive motion, the purpose of which is to suspend finality or postpone the date of finality of the opinion or decision.

The earlier case of *Houston v. Williams,* 13 Cal. 24, 73 Am. Dec. 565, in the notes to 7 Cal. Jur. 647, quoted in the majority opinion, in discussing the difference between decisions and opinions, is an interesting article on the subject to which the court addressed itself; however, it is not in point, for the reason that, whether the written expression of this court is an opinion, a decision, or a judgment, its operation is suspended by the filing of the suspensive petition for rehearing.

*There is no final judgment* or *decision until* the going down of the *mandate* or *remittitur to* the *trial court.*

If the Oregon supreme court rules mean what they say, no mandate or remittitur issues until the decision becomes final. There is no finality, under the rules of the Oregon supreme court, until the expiration of twenty days from the filing of the *final judgment* or until disposition of the petition for rehearing. If the opinion is a final judgment, the appellate court would be required to recall the mandate or remittitur before it could entertain the suspensive motion, the petition for rehearing.

The jurisdiction of an appellate court over a cause is lost upon the issuance of the mandate, and the authorities are to the effect that it is certainly lost after the remittitur has been filed in the trial court and action taken thereon. 4 C. J. 1244. It is for this reason that the period of twenty days in Oregon or thirty days in this state must elapse before the remittitur goes down, in order that the appellate court retain jurisdiction of the cause. After the cause is decided on appeal and the mandate has issued thereon, the appellate court would be without jurisdiction to grant a rehearing until it recalled the mandate for the purpose of reinvesting itself with jurisdiction. The effect of the application for a rehearing is to suspend, as heretofore stated, the judgment, decision, or opinion.

"A petition for a rehearing does not vacate or annul the judgment. It merely suspends it from the date of the filing thereof. The denial of a petition or motion for rehearing leaves the judgment in full force as of the time of its rendition. . . .

"The granting of a rehearing has the effect of withdrawing the opinion previously filed, and it then is of no force or authority, unless subsequently adopted by the court." 3 Am. Jur. 352, §§ 809, 811.

The rule that, if parties pending an appeal settle

their differences, the court will not proceed to determine the case but will dismiss the appeal, is not applicable in the case at bar. Neither is this a case where, after rehearing has been ordered, the parties arrive at a settlement rendering the questions at issue, raised on the motion for rehearing, moot questions.

There might be some merit in the position of the majority under *Hutchings v. Fanshier, supra, Dishman v. Whitney, supra,* and *Young v. Campbell, supra,* if we had ordered a rehearing of the case and the parties to the litigation thereafter reached a settlement of which we were informed. If, as a consequence, the questions at issue raised on the petition for rehearing had become moot questions, the position of the majority would be tenable. The position of the majority, however, is that the suspensive motion, the petition for rehearing (which suspended our decision or opinion), after which the parties reached a settlement of which we have been informed, resulted in making the questions at issue moot questions. Not so. All that became moot by this settlement after the petition for rehearing was filed, which petition did not vacate or annul our opinion, was the petition for rehearing. That is, there was an abandonment of the petition for rehearing; and, as urged by counsel for respondents, the settlement agreement disposed of all further contro-' versy upon this appeal, and by the entry into the agreement there was an implicit acquiescence by appellant in the Departmental opinion or decision.

The only cases cited in support of the text (4 C. J. S. 1953) on which the majority rely, that after a decision has been rendered by the appellate court and the case is still pending on motion for rehearing, or after a rehearing has been ordered, the appeal will be dismissed when there is a showing that there has been a valid settlement or adjustment by the parties

of all their differences respecting the subject matter of the controversy, are *McKenzie v. Chastain,* 181 Ga. 807, 184 S. E. 276, and *Young v. Campbell,* 20 Ariz. 355, 181 Pac. 171, which I have already discussed.

In *State v. Banks,* 94 Wash. 237, 161 Pac. 1189, pending the appeal from conviction of crime, the appellant died. His death was suggested at the oral argument. We refused to pass upon the questions presented upon the briefs and dismissed the appeal. In answer to the suggestion by counsel that we pass upon questions presented upon the briefs, we stated that the action had abated by the death of appellant and must be dismissed. We referred to *State v. Furth,* 82 Wash. 665, 144 Pac. 907, in which we stated that the death of the defendant in a criminal case pending appeal, in the absence of a statute to the contrary, permanently abates the action; that

"The underlying principle is that the object of all criminal punishment is to punish the one who committed the crime or offense, and not to punish those upon whom his estate is cast, by operation of law or otherwise."

We decided that case on the merits because we were invited by counsel to do so, and because the case was pending in the trial court against other defendants.

The position of the majority that the appeal should be dismissed for the reason that all controversies presented by the appeal and between the parties thereto have ceased, hence nothing remains upon which a judgment of this court can operate, is not sound, nor is that position supported by any authority other than *McKenzie v. Chastain,* 181 Ga. 807, 184 S. E. 276, in which no opinion was written, hence we are unaware of reason on which that decision is based. All that we should do is to deny the petition for rehearing or

enter an order to the effect that same has been abandoned.

BLAKE, C. J., and SIMPSON, J., concur with MILLARD, J.